ELMER HYATTE AND MILDRED HYATTE *v.* MIGUEL LOPEZ

[No. 3-577A122. Filed August 29, 1977. Rehearing denied September 26, 1977. Transfer denied December 7, 1977.]

*Christian John Gielow,* of Gary, for appellants.

*Philip M. Cagen,* of Valparaiso, for appellee.

ROBERTSON, C.J.

Mildred Hyatte and Elmer Hyatte (the Hyattes) appeal from a judgment entered by the trial court in a habeas corpus proceeding awarding custody of Mildred Hyatte's granddaughter, Eulalia Joanne Lopez, to Eulalia's father, Miguel Lopez (Lopez). The Hyattes raise these issues for review:

(1) Did the trial court err in denying the Hyattes' motion for continuance?

(2) Did the trial court err in recognizing custodial rights in the father of an illegitimate child?

(3) Did the trial court err in not finding a waiver of custodial rights by Lopez?

(4) Was the trial court obligated to give greater emphasis to the welfare of the child than to the custodial rights of the natural father?

(5) Did the trial court err in concluding from the evidence that the best interests of the child would be served by granting custody to Lopez?

We affirm.

Mildred Hyatte, Elmer Hyatte, and Miguel Lopez testified at the hearing. Marked conflicts pervade the testimony.

In *Brown v. Beachler* (1946), 224 Ind. 477, 68 N.E.2d 915, our Supreme Court affirmed the trial court's decision in a habeas corpus proceeding which denied a mother's petition to obtain custody of her daughter from the child's aunt. In its opinion, the Supreme Court noted that resolution of issues raised by a custody dispute involves the exercise of judicial discretion by the trial court and not the strict application

of hard and fast rules of law. The trial court has a better opportunity to weigh the evidence and to reach a proper conclusion than a court of review has with only the printed page of the record before it. The trial court observes the manner and demeanor of witnesses as they testify. It is better able to determine what resolution of the dispute is warranted.

Accordingly, it is not within the province of a court of review to weigh the evidence but, rather, to consider only that evidence most favorable to the appellee and the reasonable inferences which may be drawn therefrom and to determine whether that evidence is sufficient to sustain the decision of the trial court. *Emmons v. Dinelli* (1956), 235 Ind. 249, 133 N.E.2d 56.

The evidence most favorable to Lopez reveals that Miguel Lopez and Sandra Kamins (Kamins)[2] commenced living together in 1962 or 1963. Although Kamins left Lopez several times, they lived together during most of the next ten or eleven years but did not marry.

Kamins and Lopez are the natural parents of Eulalia Joanne Lopez, who was born July 4, 1971. The three of them lived together until either Kamins or Lopez left Eulalia with Kamins's mother, Mildred Hyatte, on February 12, 1974, shortly before Kamins entered the hospital for the birth of another child. Eulalia has resided with the Hyattes continuously since that time.

Kamins and Lopez did not live together after Kamins was released from the hospital. Lopez testified that he visited Eulalia frequently at first, but the Hyattes repeatedly interfered with his attempts to visit his daughter and once called the police when he came to visit Eulalia.

On October 17, 1975, Lopez filed a petition for writ of habeas corpus in which he alleged that Kamins had abandoned the child and the Hyattes had custody of his child without his permission or consent. The trial court ultimately awarded custody to Lopez.

---

2. In his petition for writ of habeas corpus, Lopez refers to Sandra as Sandra Kamines. In a memorandum filed with the trial court and in their brief, the Hyattes refer to Sandra as Sandra Agosto.

The Hyattes argue that the trial court erred when it denied their motion for continuance. At the time of the hearing, the home study report concerning the home of Lopez had been filed with the court, but the home study report concerning the home of the Hyattes was not yet available. The Hyattes insist that "the judge's view of the evidence had to be consciously or subconsciously affected by one favorable home study without allowing for the second home study which was not completed at the time of hearing."

The trial court has broad discretion in granting or denying a motion for continuance. *Loudermilk v. Feld Truck Leasing Co.* (1976), 171 Ind. App. 498, 358 N.E.2d 160. Likewise, the orderly procedure of trial is left to the sound legal discretion of the trial court. *State ex rel. Rooney v. Lake Circuit Court* (1957), 236 Ind. 345, 140 N.E.2d 217.

At the conclusion of the hearing, the judge stated, "Well, I think it is apparent that I want to see the Lake County Welfare report before I decide this case." The Memorandum of Decision includes this reference: "Home study reports on both homes contain conflicting recommendations." The record fails to support the Hyattes' speculations that their rights were prejudiced in some way by the sequence of events. We find no abuse of discretion.

The Hyattes contend that the father of an illegitimate child has no natural custodial right to his child. They neither cite authority nor offer argument in support of this contention. Therefore, we deem this issue waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

We consider now the three remaining issues raised by the Hyattes. They contend that the trial court (a) erred in not finding a waiver of custodial rights by Lopez, (b) erroneously placed greater emphasis upon the custodial rights of the father than upon the welfare of the child, and (c) erred in concluding from the evidence that the best interests of the child would be served by granting custody to Lopez. In each instance the Hyattes ask this court to weigh the evidence; we must decline.

*Hendrickson v. Binkley* (1974), 161 Ind. App. 388, 316 N.E.2d 376, 380, *cert. denied,* 423 U.S. 868, involved a habeas corpus proceeding in which a divorced father sought to recover custody of his child who remained with the maternal grandfather after death of the child's mother. In that opinion appears reference to a three-step approach for analyzing custody disputes between natural parents and third parties:

"First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. Secondly, to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best interests of the child to be placed with the third party."

The whereabouts of the child's mother is unknown to all parties involved in the proceeding. The custody dispute involves a natural father against a third party. Therefore, a presumption exists in favor of granting custody of the child to Lopez. This presumption may be rebutted by evidence that (a) Lopez is unfit, (b) Lopez has been acquiescent, or (c) Lopez voluntarily relinquished custody.

Lopez testified that he was gainfully employed at a job he had held since 1969, he had received promotions at work, he had made arrangements for his daughter's schooling, and both he and his wife wanted Eulalia to live with them. The Hyattes offered little evidence to prove Lopez unfit to have custody of his daughter. They alleged that he had failed to pay support or to visit his daughter regularly; he denied or offered reasons for such omissions. Elmer Hyatte alleged that Lopez had appeared at their home while Lopez was intoxicated, but Lopez denied the allegation. The Hyattes emphasized that Lopez had not pursued opportunities to marry the child's mother; Lopez testified that he did ask Kamins to marry him once but she departed with another man before the wedding. The evidence does not support a ruling that Lopez is unfit as a matter of law.

The Hyattes argue that Lopez waived any custodial right because of his alleged failure to provide support money or to visit his child. Lopez testified that he offered to pay $50 every two weeks, but the Hyattes refused to accept the money. Mrs. Hyatte stated that she rejected an offer by Lopez to pay support money because it was conditioned upon recognition of his right to remove the child from their home. Mr. Hyatte testified that he refused $20 which Lopez offered him and returned a check for $5 which Lopez mailed to the Hyattes. Lopez described repeated attempts in person and by telephone to obtain the permission of the Hyattes to visit his daughter. The Hyattes and Lopez referred to certain successful attempts by Lopez to visit Eulalia as well as times when the Hyattes refused visitation. This testimony counters the material allegations on which the Hyattes base their claim that Lopez waived his custodial rights.

Further, Lopez testified that he sought legal advise from three different sources during 1975 while trying to gain custody of his daughter. The trial court specifically found that Lopez "has diligently pursued his legal remedies to the best of his abilities, and is not guilty of laches." When asked whether he would like to have his daughter with him, Lopez responded, "I have been trying for the past three years." The record does not support a ruling that Lopez was acquiescent as a matter of law.

Next we consider testimony by Lopez which indicates that he did not voluntarily relinquish custody of his daughter to the Hyattes:

"After we separated and went to get the baby, they wouldn't give it to me."

* * *

"I don't give the baby to keep. I just give the baby because she [Sandra] was in the hospital."[3]

---

3. Mildred Hyatte testified: "It was agreed by all parties concerned that Lia remain in our home *until her* [Sandra's] *confinement was over with.*" (Emphasis added.) Elmer Hyatte testified that Kamins decided to leave the child with the Hyattes after her release from the hospital. The date of Kamin's decision to leave Eulalia with the Hyattes and the date of Kamins's disappearance are not revealed by the record.

Parenthetically we note also that the record for review is totally barren of evidence to suggest the possible effect upon Eulalia of removing her from the Hyattes' home. Apparently her relationship with the Hyattes is favorable, but this fact does not prove that the future happiness of Eulalia will be seriously marred and endangered by the award of custody to Lopez. Further, the trial court did interview the child before reaching its decision that "the best interest of the child would be served by her being placed with her father."

The Hyattes argue that, because Eulalia had been living with them, it was incumbent upon Lopez to prove that the welfare of the child would best be served by awarding custody to him. In *Hendrickson v. Binkley, supra*, the child had lived with his grandparents for more than six years, including periods both before and after the death of his mother, when his father filed for writ of habeas corpus. It is from *Hendrickson* that we quote the three-step approach for analysis. Clearly the burden of proof did not shift to Lopez.

The Hyattes insist that "the child's welfare is the paramount and controlling question to be determined in providing for its custody and control." They cite *Gilchrist v. Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417; *Brown v. Beachler* (1946), 224 Ind. 477, 68 N.E.2d 915; *Kessler v. Kessler* (1963), 135 Ind. App. 85, 192 N.E.2d 4;[4] *Glass v. Bailey* (1954), 233 Ind. 266, 118 N.E.2d 800; and *Emmons v. Dinelli* (1956), 235 Ind. 249, 133 N.E.2d 56.

The one characteristic that these cited cases share is that all were affirmed on appeal with deference to the trial court and its province of weighing the evidence. In *Gilchrist*, the trial court awarded custody to the mother even though the child had been living with the stepmother and even though the stepmother arguably offered better accommodations and greater financial security. We quote from that opinion, at 225 Ind. 367, 373, 75 N.E.2d 417, 419:

"[I]t is not for us to substitute our judgment for the judgment of the trial court's [sic] unless it appears from uncontradicted

---

4. *Kessler* concerns a dispute between parents rather than between parent and third party.

and undisputed evidence and the only inferences therefrom that the trial court violated its discretion and reached an untenable position."

The trial court's judgment indicates that the home study reports provided conflicting recommendations. It would serve no purpose to recite all of the details concerning Lopez and his household and the Hyattes and their household. It is sufficient to say that this evidence is no more decisive than are the recommendations of the home study reports. Although Eulalia's life in a five-and-one-half-room apartment in Chicago with her father, a stepmother, and the stepmother's two children would be considerably different from her life with the Hyattes in a seven-room house in Hobart, Indiana, we cannot conclude from the record that the trial court abused its discretion in awarding custody to Lopez after it received all the evidence.

We quote again from *Hendrickson v. Binkley, supra*, at 316 N.E.2d 376, 381:

> "[I]n custody cases, especially as here where a certain permanency of custody is involved, the court cannot determine that it is in the best interests of the child to be placed within the custody of a third party, as against the presumption favoring the natural parent, unless the trial court has first determined from clear and cogent evidence that there is either unfitness of the [parent], long acquiescence, or voluntary relinquishment. If the 'best interest rule' was the only standard needed without anything else, to deprive the natural parent of custody of his own child, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of natural parents. In other words, a child might be taken away from the natural parent and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the 'best interest' of the child would be satisfied by being placed with a third party."

The trial court noted that this was not an easy case to decide. Having carefully considered the parties' arguments and thoroughly reviewed the record, we can appreciate the Herculean nature of the task with which the trial court struggled. We find no abuse of judicial discretion. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE—Reported at 366 N.E.2d 676.