**In the Matter of the PATERNITY OF Naomi G. JOE.**

**Linda D. JOE, Appellant (Respondent below),**

v.

**Robert F. LEBOW, Appellee (Petitioner below).**

No. 4–485A87.

Court of Appeals of Indiana, Fourth District.

Dec. 23, 1985.

James A. Buck, James A. Reed, Indianapolis, for appellant.

Sherwood P. Hill, Maurer, Rifkin & Hill, Indianapolis, for appellee.

MILLER, Judge.

In this paternity action, the petitioner-appellee, Dr. Robert F. Lebow, M.D., (Father), filed his petition to establish paternity, alleging he was the father of Naomi Gertrude Lebow (Daughter), who was born on January 12, 1983 to the respondent-appellant, Dr. Linda D. Joe, M.D., (Mother). The parents stipulated Father's paternity of Daughter, and Father did not contest legal custody, which was then awarded to Mother. Aside from the petitions for contempt citation that each parent filed against the other, the only seriously disputed issue at the final hearing was Father's visitation with Daughter, an issue complicated by Mother's move during the pendency of trial from Indianapolis, Indiana, where Father resides, to the Washington, D.C. area. Daughter, who was twenty-two months old and suffering from a neuromuscular disorder at the time of trial, moved with Mother. The judge of the Marion Superior Court (Juvenile Division) essentially approved the visitation schedule suggested by Father and entered a permanent order providing that, in 1985 and each odd-numbered year thereafter, Father was to have visitation for twelve two-week periods, beginning on the first Saturday of each and every month. In 1986 and even-numbered years thereafter, Father's two-week visitation periods were to begin on the third Saturday of each month. Father was to pick Daughter up and return her to Mother's custody and to pay all transportation expenses incurred in the exercise of his visitation rights. Mother brings this appeal, alleging the trial court's visitation order was in excess of the court's discretion. We agree. We find the order to be illogical, unworkable, contrary to the fixed policy of this state that a permanent residence is in a child's best interests, and unsupported by evidence to show why that policy should not be followed in this case. Furthermore, we believe the practical effect of the visitation order would be to undermine Mother's statutory right as custodial parent. Therefore, we reverse.

FACTS

The record reveals that Daughter was born on January 12, 1983 in Indianapolis. At trial, it was stipulated that Father was the father of the child and legal custody, being uncontested, was granted to Mother. Daughter was twenty-two months old at the time of trial and had a "neurological disability" that affected the development of her muscular tract. It appears that in all

other ways, Daughter was a perfectly normal little girl.

Father was a physician by profession, who worked in both Indianapolis and Anderson, Indiana. He was also fifty percent shareholder of a corporation that was responsible for managing the emergency room at Community Hospital in Anderson and of another corporation that owned business and investment real estate. Father's gross weekly income was $2,579. Father requested that he be allowed two weeks of visitation with Daughter every month, because he wanted to have the opportunity "to get [to] know her well and for her to get to know me, and in short, have some influence on, on her life, and how she grows up and what she knows, and her philosphy of living, and, and basically help make her happy." (R.112–13) Father also stated he wanted to encourage Daughter's physical development by engaging in physical activities with her. He stated that Daughter could be seen by a neurologist and perhaps a pediatrician while she visited with him in Indianapolis and that he would have no problem whatsoever with keeping Mother up to date regarding Daughter's medical situation. Father also stated that he wanted periodic visitation with Daughter so he could schedule a lot of personal time with her and so he could purchase at a discount the airline tickets necessary to his flying to Mother's place of residence to pick Daughter up and return her to Mother's custody.

Mother was also a physician and, five months prior to trial, had moved with Daughter to the Washington, D.C. area in order to study medicine in a fellowship program. Her gross weekly income was $465. She requested that Father be restricted to one-week periods of visitation with Daughter in Washington, with the requirement that Daughter be returned every night to sleep in Mother's home. Mother's primary concern was that Daughter "should not be subjected to stress as a consequence of visitation." (R.158) Mother felt that Daughter had been "stressed" by Father's two periods of visitation, each lasting a week, in the five months preceding trial. She also stated that Daughter was receiving perfectly good medical care from a top pediatric neurologist in Washington.

The trial court heard this and other evidence and awarded custody, which Father did not contest, to Mother. The court also entered the following visitation order:

"9. That Petitioner shall have visitation with such minor child at his place of residence for two-week periods commencing with the first Saturday of each month and continuing through December 31, 1985. Commencing with January 1, 1986, such two-week visitation periods shall commence on the third Saturday of each month, and the parties shall then alternate the commencement date of such two-week visitation each year thereafter. Petitioner shall be responsible to pay and shall pay all transportation expenses incurred in the exercise of all such visitation. Respondent shall make arrangements to meet and shall meet Petitioner at the appropriate air terminal at all times such child is either picked-up from or returned to Respondent's bailiwick. Commencing with the calendar year 1985, Petitioner shall have the child visit with him for one additional week during each summer vacation, such week to be decided upon by the parties upon reasonable notice given. On alternating years Respondent shall have the child visit with her for one additional week during the summer vacation, such week to be decided upon by the parties upon reasonable notice given."

(R.68–69) Mother brings this appeal, alleging the above visitation order constitutes an abuse of discretion. We reverse.

### DECISION

Our paternity statute provides for reasonable visitation by the noncustodial parent:

"Sec. 12. (a) A noncustodial parent is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation might endanger the child's

physical health and well-being or significantly impair his emotional development.

(b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."

IC 31–6–6.1–12 (1982).

■ Under either the paternity statute or the divorce statute, IC 31–1–11.5–20 *et seq.*, decisions involving child custody and visitation—all involving the best interests of the child [1]—are committed to the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of that discretion. *See Hyatte v. Lopez* (1977), 174 Ind.App. 149, 366 N.E.2d 676 (child custody in paternity case); *Fox v. Fox* (1984), Ind.App., 466 N.E.2d 789 (child custody under divorce statute, IC 31–1–11.-5–21); *In re Marriage of Larkin* (1984), Ind.App., 462 N.E.2d 1338 (child visitation under divorce statute, IC 31–1–11.5–24). We find that the abuse of discretion standard should apply to our review of the trial court's determination of Father's visitation rights under our paternity statute, IC 31–6–6.1–12.

■ An abuse of discretion exists, as a general rule, where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court or the reasonable, probable and actual deductions to be drawn therefrom. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749. Put differently, this court will find no abuse of discretion if there is substantial probative evidence to support the conclusion of the trial court. *Griffith v. Webb* (1984), Ind.App., 464 N.E.2d 384 (modification of custody under paternity statute, IC 31–6–6.1–11(e)). The trial court's discretion is limited in a case such as the present case, however, to the extent that it must be exercised in furtherance of the child's best interests. *See Fox v. Fox, supra; Griffith v. Webb, supra.*

1. In decisions involving child custody, visitation and modification thereof, whether under the divorce statute or the paternity statute—the best interests of the child are the primary consideration. *See Marsico v. Marsico* (1972), 154 Ind. App. 436, 442–43, 290 N.E.2d 99, 102 (recognizing, in divorce case, that "the best interests of the child is [sic] paramount" in determination of child visitation); IC 31–6–6.1–11(a) (determination of child custody under paternity statute); *id.* § 11(e) (modification of child custody under paternity statute); *id.* § 12 (determination and modification of child visitation under paternity statute); IC 31–1–11.5–21 (determination of child custody under divorce statute); *id.* § 24 (determination and modification of child visitation under divorce statute). In addition, although IC 31–1–11.5–22(d) (modification of child custody under divorce statute) provides that child custody in a divorce · case shall be modified "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable," our supreme court has interpreted this language as follows:

"The statute is nothing more than a codification of the case law of this jurisdiction. The words 'substantial and continuing,' with reference to the change of condition are merely a rephrasing of our case law requirement that it be of a 'decisive nature'; and the requirement that it 'make the existing order unreasonable' is no different than the case law requirement that the change be 'necessary for the welfare of the child.'"

*Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 888. Thus, the modification of child custody in a divorce case must also be guided by the best interests of the child. *See Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947, 952.

In deciding the present case, we rely on cases involving the best interests of the child in these contexts closely related to, but different from, the visitation issue arising in paternity cases. We so rely first because there are virtually no cases involving that precise issue under IC 31–6–6.1–12. Second, statutes that relate to the same general subject—in this case, child custody and visitation—are *in pari materia* and should be construed together. *Starr v. City of Gary* (1934), 206 Ind. 196, 188 N.E. 775; 26 I.L.E. *Statutes* § 130 (1960). "The rule of *in pari materia*—like any canon of statutory construction—is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States* (1972), 409 U.S. 239, 243, 93 S.Ct. 477, 480 [34 L.Ed.2d 446]. Similarly, in interpreting a particular phrase—in this case, "best interests of the child"—we believe it mandatory to give the phrase a meaning in the context of child visitation under the paternity statute, IC 31–6–6.1–12, that is consistent with the meaning given to the phrase in the closely related contexts of child custody under the paternity statute, *id.* § 11, and child custody and visitation under the divorce statute, IC 31–1–11.5–21 and 24.

We find the trial court's visitation order was an abuse of the court's discretion because there was no substantial probative evidence to support the conclusion that the visitation created by the order, requiring the exchange of *physical custody* of Daughter twice per month, was in the best interests of the child. Indeed, such an order contravenes a long-standing policy in this state:

> "It has been a fixed policy of the courts to arrange for custody of children of divorced parents on a basis of permanence to the extent that conditions will permit, providing of course for visiting periods for the parent not having custody. This is on the theory that a permanent residence is best for the welfare and happiness of the child."

*Adams v. Purtlebaugh* (1951), 230 Ind. 269, 275, 102 N.E.2d 499, 502 (reversing modification of custody order arising from divorce action); *see also Wible v. Wible* (1964) 245 Ind. 235, 196 N.E.2d 571; *accord, Westrate v. Westrate* (1985), Wis. App., 124 Wis.2d 244, 369 N.W.2d 165 (Wisconsin child custody statute applied in divorce case does not authorize distinction between legal and physical custody because statutory scheme intended to create "single custodial environment.") We know of no reason why this policy would not apply equally in a paternity, as opposed to a divorce, action. *See supra*, note 1.

The visitation order of the trial court placed Daughter in Father's physical custody for almost half of each month and requires air travel of approximately 500 miles nearly every two weeks to accomplish the transfer of Daughter from one parent to the other. The trial court clearly failed to consider the policy of permanent residence expressed by our supreme court in *Adams v. Purtlebaugh, supra,* and therefore ignored a crucial factor in determining the best interests of the child for the purpose of child visitation.

This is not to say that, when all other factors bearing on the best interests of the child are considered, a visitation schedule such as the one in this case could *never* be found in a particular child's best interest. Factors that have been considered relevant include the age and sex of the child; the wishes of the child and of the parents; the child's interaction with his family; his adjustment to the home, school and community; and the mental and physical health of the child, parents and others involved in the child's interests. *Griffith v. Webb*, 464 N.E.2d at 385–86 (citing IC 31–1–11.5–21(a).[2]

The evidence in the present case showed that Daughter was twenty-two months old at the time of trial. Both Father and Mother wanted to spend a great deal of "quality time" with their child. Regarding visitation more specifically, Father wished to spend two weeks per month with Daughter at his Indianapolis residence, while Mother wished to restrict Father's visitation to one-week periods in Washington, D.C., with the requirement that Daughter be returned every night to Mother's home. Daughter interacted very well with both parents, although both testified that there was a period of readjustment lasting a day or two when Daughter acted "strange" or "less familiar" with the parent who had just regained physical custody of the child from the other parent. The parents were both in good physical health, but Daughter suffered from a neuromuscular disability that impeded her physical development and re-

---

**2.** In *Griffith v. Webb,* the mother appealed from a modification of child custody ordered pursuant to the paternity statute, IC 31–6–6.1–11. Subsection 11(e) provides that a court "may modify custody rights whenever modification would serve the best interests of the child." *Id.* § 11(e). In determining whether the trial court's order for modification of custody constituted an abuse of discretion, this court, in *Griffith,* relied on the six statutory considerations for the best interests of the child that a court must consider in determining child custody in a divorce proceeding, *see* IC 31–1–11.5–21(a). The *Griffith* court, with equal justification, could have ordered relief on the identical six considerations found in the paternity statute's child custody section, IC 31–6–6.1–11(a). We believe these same six considerations properly may be applied in determining the best interests of the child for purposes of child visitation under the paternity statute, *id.* § 12. *See supra* note 1.

quired the attention of a pediatric neurologist. We also note that it is clear from the record that Mother and Father had little affection left for one another and cooperated with each other only with the greatest reluctance.[3]

We believe that when consideration is given to all of the evidence bearing on the factors that go into the determination of the best interests of the child—including the policy of permanent residence—the visitation order of the trial court is not supported. There is no substantial probative evidence to support the conclusion of the trial court that the extremely liberal visitation granted to Father is in Daughter's best interests. Certainly, there is insufficient evidence to refute the theory that a permanent residence would be best for the welfare and happiness of Daughter in this case. *See Adams v. Purtlebaugh, supra.* Therefore, we conclude the court's visitation order constituted an abuse of discretion. *See Griffith v. Webb, supra.*

■ We also believe the trial court's visitation order would impermissibly infringe on Mother's statutory rights as custodial parent. As we have noted, the issue of *legal custody* was not contested in this case, and Mother was named custodian of Daughter. As such, Mother acquired the rights and responsibilities stated in subsection 11(b) of the paternity statute: "The custodial parent may determine the child's upbringing, which includes his education, health care, and religious training, unless the court determines that the best interests of the child require a limitation on this authority." IC 31–6–6.1–11(b). The trial court did not determine there should be any limit on Mother's custodial authority.

■ The right to determine a child's upbringing requires the creation of a stable, consistent home environment that is implicit in the policy of permanent residence expressed in *Adams v. Purtlebaugh, supra.* The physical absence of Daughter from Mother's home for two weeks each month would seriously undermine Mother's rights under IC 31–6–6.1–11(b) to determine Daughter's upbringing. *Accord, Westrate v. Westrate* (1985), Wis.App., 124 Wis.2d 244, 369 N.W.2d 165. This is especially so in the area of Daughter's health care in light of her neuromuscular disability, which, apparently, requires the attention of a specialist.

We recognize that it is merely visitation and not legal custody nor any of the rights that attach thereto that Father has been granted in this case. Nevertheless, as this court has recognized, "the line between visitation and divided custody becomes blurred in cases such as this where one parent moves so far in distance from the custodial parent that a traditional visitation schedule is impractical or impossible." *In re Marriage of Ginsberg* (1981), Ind.App., 425 N.E.2d 656, 658 (affirming modification of visitation under divorce statute, IC 31–1–11.5–24, that allowed mother, who had moved to Italy for three years, visitation

---

3. The record reveals that during the pre-trial phase of this case, after Mother's move to Washington, D.C., the trial court ordered that Father have one week of visitation in July, 1984, two weeks in August, and the week of September 25 to October 2, 1984. (R. 30) On July 23, 1984, following the July visitation, Mother filed an emergency petition to modify Father's visitation, alleging that the July visitation had left Daughter "extremely upset and distressed and fearful of separation from her mother." (R.32) On August 14, 1984, Father filed a petition for contempt citation, alleging Mother had denied Father his two week visitation rights for that month. (R.36) At an August 29, 1984 hearing, the court ordered the parties to agree on an appropriate time to make up the two weeks visitation Father was denied in August. (R.46)

Father apparently had the September 25 to October 2 visitation originally ordered. Then on November 1, 1984, Father filed another petition for contempt citation, again alleging Mother was denying him the two weeks visitation originally ordered for August and subsequently ordered to be made up at a time agreed upon by the parties. (R.58) Mother countered with her own petition for contempt citation, alleging Father had failed to return Daughter to Mother's custody as scheduled at the end of Father's September visitation, requiring a trip by Mother from Washington to Indianapolis to retrieve Daughter. Thus, from the trial court's original order of three visitation periods, resulted three petitions for contempt citation, one petition for modification of visitation, and a great deal of acrimony between the parents.

with child for three months each summer, a holding specifically limited to its facts). If it is true that distance between parents can render a *traditional* visitation schedule impractical, then distance can render a visitation schedule, such as the present one, that is far more liberal than traditional totally unworkable. We note the language of the Court of Appeals, of Wisconsin in *Westrate v. Westrate, supra,* attempting to clarify the blurred line between liberal visitation and custody:

"Visitation refers to the noncustodial parent's right of access to a child. While the noncustodial parent is responsible for the care of the child during visits, visitation differs from custody because the noncustodial parent and child do not live together as a single family unit. The day-to-day routine of the child, the quality of life, and the general style of life are provided by the custodial parent. Nonetheless, it is generally desirable for a child to maintain contact with both parents after a divorce. Liberal visitation therefore may be granted when it is consistent with the best interest of the child. The upper limit on visitation, however, is that amount of time that is consistent with the creation of a single custodial environment."

369 N.W.2d at 168 (citations omitted).

We do not doubt that Father sincerely believes it is in Daughter's best interests to have frequent and extended visits with him, but he presented nothing more in support of his belief than his own non-expert testimony. While this court has recognized that "allowing a child to visit its father ... takes the best interests of the child into consideration," *Marsico v. Marsico* (1952), 154 Ind.App. 436, 442–43, 290 N.E.2d 99, 102, nevertheless, the visitation order of the trial court—which places Daughter in Father's physical custody for twenty-four of fifty-two weeks each year—violates the policy of permanent residence declared by our supreme court in *Adams v. Purtlebaugh, supra,* and interferes with Mother's statutory rights as custodial parent.

Because the evidence does not support the conclusion that the visitation order of the trial court was in the best interests of the child, we hold the trial court abused its discretion. See *Griffith v. Webb, supra.* This cause is, therefore, reversed. At trial there was a surprising absence of evidence concerning Mother's plans as custodial parent for the impending necessary education of Daughter and the effect such plans would have on the visitation order. As the order now stands, it is fettered with the built-in need for modification as Daughter approaches the age of mandatory education or—should Mother determine it is best for the child—preschool education. The education of a child is necessarily included in his or her best interests, but the trial court ignored such interest by entering an order that, on its face, would interfere directly with Daughter's education. On remand, the trial court is ordered to hear further evidence concerning Mother's plans for Daughter's education and for plans for other elements of Daughter's upbringing that might affect the visitation order. The trial court shall consider such evidence in modifying the existing visitation order consistent with this opinion.

Reversed and remanded with instructions.

YOUNG, P.J., and CONOVER, J., concur.