In re the CUSTODY OF Jennifer
Fay McGUIRE.

Consolidated With In the Matter of the
PATERNITY OF Jennifer Fay
McGUIRE.

Teresa ROMINES, Appellant
(Petitioner),

v.

Marion L. ROMINES and Ella Louise
Romines, Appellees (Intervenors).

No. 2–984–A–293.

Court of Appeals of Indiana,
Second District.

Dec. 30, 1985.

Dennis K. Frick, Daniel J. Smith, Anderson, for appellant.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Petitioner-appellant, Teresa Romines
(Teresa), appeals the trial court's decision
to allow her parents, intervenor-appellees,

Marion and Ella Louise Romines (Grandparents) to retain custody of Teresa's daughter, Jennifer Fay McGuire (Jennifer), contending the decision is contrary to the evidence and the law and an abuse of discretion.

We reverse.

## FACTS

The evidence most favorable to the trial court's judgment reveals that Teresa was sixteen years old when she discovered she was pregnant. As a result of conflicts with the Grandparents, she moved out of their home and began living with her boyfriend, Donald McGuire (McGuire), the unborn child's putative father. Teresa, however, was required to move back home with the Grandparents where she was living when Jennifer was born on May 11, 1981. Three months later, on August 11, 1981, Teresa and McGuire filed a voluntary petition to establish McGuire as Jennifer's father. The juvenile court granted the petition the same day. At about this same time, although the record is not at all clear, Teresa apparently moved out of the Grandparents' home again, due to continuing conflicts with the Grandparents. The Grandparents were hostile to McGuire and refused to allow Teresa to see him or for him

to see Jennifer. As a result, Teresa and Jennifer moved in with McGuire and attempted to make ends meet. But, McGuire was unemployed. So, when Teresa had nothing to feed Jennifer and nowhere else to go for help, she called on the Grandparents to take them back, which they did. Nevertheless, the Grandparents still refused to allow McGuire to visit Jennifer, and the family disputes continued. The same cycle repeated itself twice more over the next eighteen months or so with Teresa moving back to the Grandparents' home in approximately May, 1983. This time, the Grandparents convinced Teresa that it was necessary for her to give them temporary legal custody so they could include Jennifer under the coverage of their medical insurance. To accomplish this goal, Teresa signed a form which stated that she consented to giving the Grandparents custody because she thought it was in Jennifer's best interest. Teresa testified that she did so only because she trusted the Grandparents and because the Grandparents' attorney assured her that it was just temporary custody.

In any event, the Grandparents filed the consent form with the juvenile court along with a petition to obtain custody on August 30, 1983.[1] On September 14, 1983, the

1. This petition was filed under a different cause number than the earlier paternity action and was entitled: "PETITION UNDER IC 31–1–11.5–20 FOR ORDER OF CUSTODY." *Record* at 28. Ind.Code 31–1–11.5–20 (1982) is a section of our marriage and divorce statutes which deals with the commencement of a proceeding to determine the custody of children whose parents either are divorced or are in the process of obtaining a divorce. We fail to recognize how this section was at all applicable under the circumstances of this case in that Jennifer's parents had never been married, much less divorced. Nevertheless, we will assume, without addressing the propriety of the trial court's action, that it treated the petition as one requesting a modification of the custody decree entered in the paternity action pursuant to IC 31–6–6.1–11 (1982). This section concerns the determination of the custody of children who are the subject of a paternity action. Unlike IC 31–1–11.5–22(d) (1982), which deals with the modification of the custody of children of divorced parents, IC 31–6–6.1–11 does *not* require a showing of a substantial and continuing change in

circumstances since the prior decree to obtain a modification of a decree entered in a paternity action. Rather, IC 31–6–6.1–11(e) permits a modification of custody "whenever modification would serve the best interest of the child." But, as will be made clear in this opinion, the "best interest standard" can only be utilized when the custody dispute is between the natural parents of the child. *See also In Re Simmons* (1985), Ind.App., 487 N.E.2d 450. In fact, IC 31–6–6.1–11 does not appear to contemplate an award of custody to anyone other than one of the child's natural parents. It certainly does not expressly authorize a trial court to award custody to a nonparent. Thus, it is doubtful that grandparents or other third parties have standing to seek custody of children in the context of a paternity action. This legal question has not been argued in this appeal, however. Moreover, the resolution of this quesiton will turn on an interpretation of the complex interrelationship of a variety of statutes, among them our grandparents' visitation statute, IC 31–1–11.7–1 to –8 (1982), and the provisions of our juvenile law, IC 31–6–1 to –11 (1982). Consequently, this question

Grandparents were awarded custody by the court. Conflicts in the Grandparents' home did not abate, however, and McGuire was still not permitted to see his daughter. In addition, the Grandfather was drinking heavily and yelling at Teresa, as well as others in the home. The situation climaxed around Christmas when Teresa left the Grandparents' home to move in with two girlfriends. The Grandparents refused to allow Teresa to take Jennifer with her and, in fact, even refused to allow Teresa to visit Jennifer. As a result, Teresa began telephoning the Grandparents to complain about the custody situation and to inquire as to when she would be allowed to see her daughter. In response, the Grandparents obtained an unlisted number and refused to give it to Teresa.

Shortly thereafter, on January 27, 1984, Teresa filed a motion to set aside the court's September 14th order awarding custody to the Grandparents. The court set this motion for a hearing on February 23, 1984. On February 8, the Grandparents petitioned the court to order a welfare investigation of Teresa's current living arrangements, but the court withheld a ruling on this petition pending Teresa's response. Then, on February 15, 1984, Teresa, McGuire, and the Grandparents appeared before the court and agreed in pertinent part:

"1) Respondent, Teresa Romines shall complete the STEP [Systematic Training for Effective Parenting] classes which she is attending at the Family and Children Services under the instruction of Carolyn Richardson.

2) That upon completion of said classes and the recommendation of her instructor, custody of Jennifer Fay Romines shall be returned to her and this cause shall be dismissed."

*Record* at 17, 43. Upon Teresa's completion of the STEP classes and at her re-

quest, the matter was set for a review hearing on March 8, 1984. At this hearing, the trial judge consolidated the custody action with the paternity suit and allowed the Grandparents to intervene. At the close of the evidence, which showed that Teresa had satisfactorily completed the STEP classes, the judge acknowledged that parents have particular rights to the custody of their children, but stated:

"[T]he law also requires parents to show a willingness and ability to be able to properly care for their children and the overriding consideration that this Court's faced with is what is in the best interest of the child. The Court is convinced at this time that although the Respondent/mother has sufficiently satisfied uh, portion of the term of the agreed entry of February 15, 1984, the Court needs additional information for consideration as to what living circumstances would be in the best interest of Jennifer Fay McGuire."

*Record* at 133–34. The court went on to say:

"Your parents indicate and I think they are sincere that they want you to have the child back but only when there [sic] asured [sic] uh, under the legal standards when the Court can be asured [sic] that it would be a proper invironment [sic] and the child would be appropriately cared for. So, I don't think that there is really disagreement other than as to when that will happen and under what circumstances."

*Record* at 137. Consequently, despite Teresa's compliance with the terms of the February 15 agreed entry, the custody action was not dismissed. Rather, the trial court required Teresa to participate in additional programs, ordered the Madison County Department of Public Welfare to conduct an investigation into Teresa's current living arrangements, and maintained custody of Jennifer in the Grandparents.

must await a case in which it is properly presented and briefed by the parties on each side of the issue. Therefore, we assume, solely in this particular case and without deciding the

issue, that these grandparents had standing to seek custody and that the court had the authority to award them with custody.

Upon completion of the welfare report, a second hearing was conducted on May 21, 1984. Teresa testified that she was living with Penny Keller (Keller) and Keller's two children. Teresa also admitted that she had allowed McGuire to spend several consecutive nights in the home since the prior hearing, but denied that he was currently living there. The Grandparents testified that their primary reason for thinking that Teresa should not have custody was that she would not discontinue her relationship with Jennifer's father, *record* at 235, 240, but instead, continued to see him and even live with the "bum." *Record* at 208.

At the close of this hearing, the court took the case under advisement and ordered a welfare investigation of the Grandparents' home. Upon receipt of this report and without holding an additional hearing, the court determined that the Grandparents should continue to maintain custody of Jennifer. The court so ordered on June 15, 1984, and Teresa's appeal followed.

## ISSUE

■ As we reverse, we address only one of the several issues raised by this appeal:

Did the trial court abuse its discretion by not returning Jennifer to Teresa's custody?

## DECISION

PARTIES' CONTENTIONS—Teresa contends that, as Jennifer's natural parent, she was presumptively entitled to custody and that the trial court's decision to maintain custody in the Grandparents, against Teresa's wishes, constituted an abuse of discretion because there was no evidence that she was unfit or that she had acquiesced in or voluntarily relinquished custody for any significant period of time.[2]

*CONCLUSION*—The trial court abused its discretion by not returning Jennifer to Teresa's custody.

Child custody determinations rest in the sound discretion of the trial court, *Hyatte v. Lopez* (1977), 174 Ind.App. 149, 366 N.E.2d 676, *trans. denied*, and such a determination will not be disturbed on appeal unless the trial court has abused its discretion. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885. Thus, we are reluctant to reverse unless the trial court's determination is clearly erroneous and contrary to the logic and effect of the evidence before the court. *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807.

■ We are not here confronted with a custody dispute between two parents. In such a case, each parent has an equal right to custody and there is no presumption favoring either parent. *See* IC 31-6-6.1-11(a); IC 31-1-11.5-21(a). In this sense, parents are on par with one another and the seminal issue is the best interest of the child. On the other hand, in a custody dispute between a parent and a third party, such as we have here, the focus is significantly different because the parties are not on par. Although the child's best interest is still of great importance, it is *presumed* that it is in the best interest of the child to be placed in the custody of the parent. *Hendrickson v. Binkley* (1974), 161 Ind. App. 388, 316 N.E.2d 376, *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98. Consequently, a nonparent who seeks to displace the parent as custodian bears the burden of overcoming the parent's presumptively superior right to custody. *Id.* This burden has been described to require a showing, by clear and cogent evidence, that the parent is unfit or has acquiesced in or voluntarily relinquished custody to the third party for such a long period of time that "the affections of the child and the third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *Id.* at 394, 316 N.E.2d at 380. Even when a parent initiates an action to reobtain custody of a child that has been in

2. The Grandparents have not favored us with an appellee's brief. Consequently, Teresa may prevail in this appeal merely by making a prima facie showing of reversible error. *See S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103, *trans. denied*.

the custody of another, the burden of proof does not shift to the parent. *Hyatte, supra.* Rather, the burden of proof is always on the third party. *Id.*

■ In this case, the Grandparents were originally awarded legal custody with Teresa's consent. Teresa, however, withdrew her consent when family problems caused her to move out of the Grandparents' home. The Grandparents, however, refused to let Teresa take Jennifer with her and even refused to let Teresa visit. Almost immediately, Teresa petitioned the court to set aside the order awarding custody to the Grandparents because it was being used to deprive her of custody in excess of her understanding and agreement. The burden was on the Grandparents to present sufficient evidence to justify their continued custody of Teresa's child against Teresa's wishes. The trial court, however, erroneously shifted the burden of proof to Teresa to demonstrate that it would be in Jennifer's best interest to be returned to Teresa's custody. In fact, the trial court set conditions requiring her to prove her fitness. The trial court obviously, but incorrectly, applied a best interest analysis to this case. Despite what appear to be good intentions on the part of the trial court, its actions ignored Teresa's rights as a parent and amount to reversible error. As was stated in *Hendrickson, supra* at 396, 316 N.E.2d at 381:

> "If the 'best interest rule' was the only standard needed without anything else, to deprive the natural parent of custody of his own child, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of the natural parents. In other words, a child might be taken away from the natural parent and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the 'best interest' of the child would be satisfied by being placed with a third party."

The very fears expressed in *Hendrickson* seem to have been realized in this case. That is to say: Teresa was deprived of the custody of her child even though the trial court never found that she was unfit; nor would the record support such a finding. Instead, the Grandparents merely asserted that they would be better custodians and providers than Teresa and made it very clear that their primary reason for wanting custody was their frustration with Teresa's continued relationship with McGuire, whom they held in contempt. It was never shown, however, that McGuire had ever abused Teresa or Jennifer. *Record* at 209, 240. More importantly, Teresa had never abused or neglected Jennifer, *record* at 209, and her cohabitation with Jennifer's father does not, in itself, constitute unfitness. *Cf. Dunlap v. Dunlap* (1985), Ind. App., 475 N.E.2d 723; *D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286 (Cohabitation alone is not a sufficient justification to deprive a parent of the custody of a child; rather, there must be a showing that the arrangement has a detrimental effect on the child.). The record is barren of any evidence of parental unfitness. The Grandparents' distaste for McGuire was not a legitimate basis for depriving Teresa of the custody of *her* daughter. Nor was there any evidence that Teresa had ever acquiesced in or voluntarily relinquished custody for any significant length of time. Finally, both Marla Shelton, a home educator with Family and Children's Services, and Francis Hardman of the Madison County Department of Welfare, each visited Teresa's current residence and testified that there was no reason why Teresa should not have custody of Jennifer. *Record* at 160–61, 194. Consequently, the trial court's refusal to return Jennifer to Teresa's custody was clearly erroneous and an abuse of discretion.

Reversed and remanded for other proceedings not inconsistent herewith.

SULLIVAN and SHIELDS, JJ., concur.