VERN HENDRICKSON *v.* HARVEY BINKLEY.

[No. 1-1173A199. Field September 3, 1974. Rehearing denied October 22, 1974. Transfer denied April 28, 1975.]

*Robert W. Davis,* of Corydon, for appellant.

*Evan A. McLinn,* of New Albany, *S. Morris Wilson,* of Corydon, for appellee.

LOWDERMILK, J.—Vern Hendrickson, plaintiff-appellant, was married to Betty Ann Hendrickson, daughter of Harvey Binkley, defendant-appellee. On March 24, 1967 the Hendricksons were divorced and the custody of Douglas Scott Hendrickson, then three years of age, was awarded to Betty Hendrickson.

About a year prior to the granting of the divorce appellant left his wife and son, who then moved to Corydon, Indiana, with her parents. The son, Douglas Scott, has lived with them since that time, although his mother moved to Louisville in 1969 because of her employment. She died in August, 1972, and was still calling her parents' home her place of residence.

Appellant, after the said divorce, did, in February of 1968, marry a woman with three children by a previous marriage.

In October, 1972, appellant, Hendrickson, attempted to secure the custody of Douglas Scott Hendrickson and was refused the right of visitation. He again made an attempt to have visitation with the boy and secure his custody for a visit and was again denied that right.

Following these refusals, appellee filed a petition for the

custody of the child which was heard and denied, after which appellant ceased to make support payments. The record further discloses that many payments that had been made by the appellant had not at that time been picked up from the Clerk's office.

Appellant then filed for writ of habeas corpus seeking custody of his son, Douglas Scott, to which writ defendant-appellee filed his return, alleging, among other things, that appellant was not a fit and proper person to have the custody of the child and that it was to the best interest of the child that he remain in the home of the appellee.

The evidence discloses appellant has a responsible job with a salary of $15,500 per annum and lives with his present wife and her three children in a modern, five bedroom home in Crawfordsville, Indiana, which he is buying.

Appellant's wife testified she would like to have the boy live with them in their home and when Douglas Scott visited with them he appeared to have fun and to be happy.

The evidence in behalf of the appellee was that Douglas Scott was ten years old, did well in school, was happy on the farm and wanted to be a farmer. He participated in 4-H activities, in scouting, and attends church regularly. His home life appears to be a happy one.

Special bill of exceptions number two in the transcript contains docket entries of the original divorce and is replete with petitions to modify the decree in this cause and affidavits for citation and to modify, most of which were filed by the appellant and were principally in an attempt to be able to visit and see his son, Douglas Scott, or have the said son visit with him.

The evidence further disclosed that appellant has had difficulty in his visitations with his son from the time of the divorce to the time of the habeas corpus action. There is a dispute as to appellant's failure to pay dental bills. The mother-in-law testified she informed appellant there would

be dental bills, but never told him the amounts of dental bills, if any.

Following trial the court entered its judgment that *it was to the best interests and welfare of the child, Douglas Hendrickson,* that his custody be awarded to appellee Binkley and Mrs. Binkley, and so ordered.

Appellant's motion to correct errors was timely filed and ultimately presented for review the following issues:

1. Whether the facts presented a case in which the custody of the child should be awarded to the grandfather, appellee, instead of the surviving father, appellant.

2. Whether the grandfather, appellee, in the absence of any showing that the father was an unsuitable person to have custody, was entitled to the custody of the child.

3. The trial court committed an error of law in that the judgment of the court was contrary to law.

Pursuant to Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7), these issues shall be grouped together and treated as one.

It is a well settled rule that divorce proceedings terminate entirely and die with the death of the spouse of the survivor. *State ex rel. Gregory* v. *Superior Court, etc.* (1961), 242 Ind. 42, 48, 49, 50, 176 N.E.2d 126.

The *Gregory* case, *supra,* cited the case of *Combs* v. *Gilley* (1941), 219 Ind. 139, 145, 36 N.E.2d 776, which recited the rule of common law as follows:

" ' "Both under the common law and the statutes of this State, the natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control and education." *Gilmore* v. *Kitson* (1905), 165 Ind. 402, 406, 74 N.E. 1083.'

. . . Being entitled on the death of the mother, in the absence of any showing in a proper forum, that he was an unsuitable person to have such care and custody, he would by operation of law, be entitled to have such care and custody, and could for the sake of the children permit such

custody to be vested temporarily in persons other than himself." See, also, 24 Am. Jur. 2d, Divorce and Separation, § 806, Death of Custodian, p. 915.

74 A.L.R. 1353 states:

"The prevailing rule clearly is, that upon the death of the parent who has custody under a divorce decree, the right to custody automatically inures to the surviving parent."

In *Sanders* v. *Sanders* (1974), 160 Ind. App. 174, 310 N.E.2d 905, 907, Chief Judge Hoffman of this court, in discussing the problem we have before us, said:

"The cases recognize the common-law rule that the natural parents of a minor child are entitled to custody of the child, except where they are shown to be unsuitable persons to be entrusted with the care, control and education of the child.

. . . Thus, it has been held that these parental rights must be given a full consideration and due weight in custody proceedings, although they are subordinated to the welfare of the children. . . . However, this parental right is not cut off by a determination of custody adverse to a parent, and it may serve as a basis for a later award of custody to that parent when the circumstances surrounding the original award have changed. . . ."

See, Annotation in 39 A.L.R. 2d 258.

The other construction of law in Indiana is that the "best interests" of the child are paramount to the presumption in favor of the surviving parent and therefore custody of a child is not controlled by hard and fast rules of law. This proposition is exemplified in *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417, 419, wherein the court stated:

". . . ordinarily a parent who is of good character and reasonably able to provide for his or her child is entitled to its custody as against others. . . . The rights of parents, however, are not absolute. They must yield to the welfare of the child. Its welfare and best interest are the paramount and controlling considerations in all disputes over the custody of a child. . . . The disposition of children is not controlled by hard and fast rules of law but by the

exercise of the sound judicial discretion of the court confronted with the problem. . . ."

In *Gilmore* v. *Kitson* (1905), 165 Ind. 402, 75 N.E. 1083, the court, in discussing the fundamental principle from which the above discussed branches of law were derived, said, among other things:

". . . The principle of the welfare of the child may be applied to defeat the claims of a parent *when he has voluntarily relinquished to others* the custody and care of his child until the affections of the child and its foster parents have become so firmly interwoven that to sunder them would seriously mar and endanger the future happiness and welfare of the child." (Our emphasis.)

In *Kitson*, the natural father was entitled to the custody of his daughter after the death of his wife, as against his wife's sister, though the latter was better off financially and perhaps could have afforded the child more advantages.

It is material to the result reached in the case at bar to consider that the custody of the child, Douglas Scott, was awarded to his mother by the court and was *not voluntarily relinquished to others.* (In this case, the appellee and his wife.)

There is further evidence in the record that corroborates the fact the appellant did not voluntarily relinquish the custody of his son as the record shows he successfully resisted the petition of appellee to obtain the custody of his son after the death of his former wife.

A reasonable construction of the hereinabove cited cases which utilize the "best interest" test to custody disputes between natural parents and third parties came to the correct conclusion but by a different procedure than that used in *Kitson, supra.* That is, *Kitson* and the majority rule utilizes the three step approach. First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. Secondly, to rebut this presumption it must be shown by the attacking party that

there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best interests of the child to be placed with the third party.

The case at bar involves a surviving parent against a third party (appellee-maternal grandfather) and therefore requires a showing of one of the three factors of the "best interest" test.

Appellant's evidence as to fitness was that he was remarried and had three step-children. They lived in a five bedroom home in what appeared from the evidence to be a beautiful setting near Crawfordsville, Indiana. He had a job of sufficient means to support his family, including Douglas Scott. An attempt was made to show that at the time of the divorce appellant was an unfit parent to have the custody of the child but there was no evidence adduced in the habeas corpus hearing to indicate such at the present time.

The burden was on appellee to make such proof of unfitness at the present time to avail himself of its benefits. *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 179 N.E. 773, 776.

The evidence is, further, that appellant made support payments to the Clerk as ordered and that the payments were never withdrawn from the Clerk's office by the appellee. (It is not clear if the mother accepted the support payments before her death. The support record was not placed in evidence and we are deprived of the benefit of having the exhibit showing the support paid in and paid out.)

As to long acquiescence, in that Douglas Scott lived with his grandparents, we must necessarily conclude from the facts before us that there was no long acquiescence. After the death of Douglas Scott's mother, the appellee brought an

action to get the custody of Douglas Scott awarded to him, which was denied. This was followed by the habeas corpus proceeding we are now being called upon to determine in this appeal.

Analogous to the issue of child custody is the issue of adoption which was discussed in *In Re Bryant's Adoption* (1963), 134 Ind. App. 480, 189 N.E.2d 593. In referring to cases involving guardianship, divorce, or habeas corpus proceedings, the *Bryant* court remarked that the courts are more inclined to look at the material welfare of the child than to the rights of the natural parents.

> "Nevertheless, these cases are interwoven with a strong fiber of judicial protection to help bind the parent and child in their natural relationship, i.e., '* * * where the child is in the hands of a third person, that presumption is in favor of the father.' *State on the relation of Sharpe v. Banks* (1865), 25 Ind. 495." *Bryant, supra,* 189 N.E.2d at 598.

The *Bryant* court further remarked that there must be strong and cogent reasons to justify the withholding of this presumption and further stated:

> "While, as stated hereinabove, some confusion exists in the application of the 'child's best interest rule' it is never an issue for judicial determination in an adversary adoption proceeding until the ultimate fact of 'abandonment or desertion' or 'failure to support', has been first established by clear, cogent and indubitable evidence. If we were to sustain the trial court's decision in the case before us we would by judicial precedent, lend approval to and provide a media for, the advance of governmental paternalism." 189 N.E.2d at 600.

Similarly, in custody cases, especially as here where a certain permanency of custody is involved, the court cannot determine that it is in the best interests of the child to be placed within the custody of a third party, as against the presumption favoring the natural parent, unless the trial court has first determined from clear and cogent evidence that there is either unfitness of the appellant, long acquiescence, or

voluntary relinquishment. If the "best interest rule" was the only standard needed without anything else, to deprive the natural parent of custody of his own child, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of natural parents. In other words, a child might be taken away from the natural parent and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the "best interest" of the child would be satisfied by being placed with a third party.

The evidence does not disclose any unfitness, long acquiescence, or voluntary relinquishment of the appellant father, surviving parent. We now hold as a matter of law the appellant father is entitled to the custody of the child, Douglas Scott Hendrickson, absent any such showing.

Judgment reversed and remanded with instructions to the trial court to enter judgment herein awarding the care, control and custody of Douglas Scott Hendrickson, minor son of the appellant, Vern Hendrickson, to Vern Hendrickson and for any further proceedings not inconsistent with this opinion.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 316 N.E.2d 376.