IN RE THE MATTER OF THE GUARDIANSHIP OF BARRY
STEPHAN PHILLIPS AND JENNIFER TWYRE PHILLIPS, MINORS.
CHARLES M. OVERBEY AND TRULA MOUNT
*v.* HARRY R. PHILLIPS, JR.

[No. 1-578A126. Filed November 1, 1978.]

*Thomas E. Everitt, Everitt and Houston,* of Scottsburg, for appellants.

*Donald R. Bonsett, Bonsett & Thompson,* of Scottsburg, for appellee.

ROBERTSON, J. — Harry and Catherine Phillips's short-lived marriage was blessed with two children who are the subject of this appeal.

A decree of divorce entered by Scott Circuit Court in April, 1973, granted custody of the children, subject to the husband's right of visitation, in Catherine. Thereafter, in July, 1977, Catherine met an untimely death, and co-petitioner-appellant Trula Mount of Scottsburg, maternal grandmother of the children, took the children into her care. Mount and co-petitioner-appellant[1] Charles Overbey of Goleta, California, brother of the decedent, subsequently filed a petition for appointment as co-guardians; the circuit court entered a temporary order placing the children in Mount's custody until the court could hold a hearing on the petition. Upon the hearing, the court took the matter under advisement and extended the temporary guardianship until further order. The trial court later entered an order dissolving the prior orders, appointed Mount guardian of the children's estates, denied the petition for appointment

---

1.   Mount and Overbey are jointly referred to hereinafter as Appellants.

of temporary and permanent co-guardians, and granted custody in the father, respondent-appellee, Harry Phillips (Phillips). The trial court's denial of Overbey's Motion to Correct Errors has lead to this appeal which presents the following issues for review:

1. Whether the trial court erred in failing to appoint Overbey as co-guardian of the persons of the children;

2. Whether the trial court erred in failing to order a home study of the parties in conflict; and

3. Whether the trial court erred in sustaining objections to certain questions propounded to Mount on direct examination.

We affirm.

As to the first issue, Appellants direct the court's attention to the following provision in the will of Catherine Phillips, executed prior to her divorce from Harry Phillips:

If it shall be necessary that some person other than myself be entrusted with the care and custody of my minor children, it is my request that said care, custody, and control be entrusted to Mr. and Mrs. Charles M. Overbey, of Goleta, California.

Appellants argue, in essence, that a guardian nominated by the will of the legal custodial parent of minor children is entitled to appointment over all others. For this proposition, they principally rely on *Nation v. Green* (1919), 188 Ind. 697, 123 N.E. 163, wherein the Indiana Supreme Court decided, based upon Sec. 2519 Rev. Stat. 1881,[2] that "[a] guardian nominated by will is entitled by statute to appointment over all others, but his appointment, duties and powers are governed by the law regulating guardians not so nominated." *Id.*, at 710, 123 N.E. at 168. They moreover maintain that today's IND. CODE 29-1-18-10,[3] insofar as

---

2. When a guardian has been appointed by will by a father or mother of any child, such guardian shall be entitled to preference in appointment over all others, without reference to his place of residence or the choice of such minor; but his appointment and duties and powers shall, in all other respects, be governed by the law regulating guardians not appointed by will. [2 R.S. 1852, ch. 12, § 7, p. 321.]

3. (a) The court shall appoint as guardian or coguardian of an incompetent the person, persons or corporate fiduciary or any combination thereof most suitable and willing to serve, having due regard to:

* * *

(2) any request for the appointment contained in a will or other written instrument;

it relates to appointment of a guardian contained in a will, is historically traceable to Sec. 2519, and that "[t]he evolution[4] of IC 29-1-18-10 to its present form has had a common and consistent theme regarding the preference for the appointment of a guardian nominated by Will." (Appellants' brief.)

There are several reasons, however, for our deciding this issue against Appellants and in favor of the trial court's determination.

First, Appellants' reliance on *Nation v. Green,* as Phillips correctly suggests, is misplaced. In *Nation,* the father had been previously decreed unfit to care for the child in controversy. 188 Ind. at 697, 123 N.E. at 168. Such was not the case here; there is no evidence in the record that Phillips had previously been decreed as unfit for the care and custody of his children. In addition, the factual setting of the 1919 *Nation* case is so readily distinguishable from the present setting as to be of negligible guiding value.

Secondly, Appellants' statutory construction ignores other statutes and case precedent relevant to custodial and guardianship rights of surviving parents.

We observe initially that IC 29-1-18-5 and -6 are pertinent. Section 5, with certain exceptions, provides that parents shall be natural guardians of their children. Section 6 states, in part, that "[a] guardian of the person may be appointed for any incompetent *except a minor having a natural guardian in this state who is properly performing his duties as natural guardian . . . .*" (Our emphasis.)

Indiana cases have also recognized the rule of the common law that the natural parents of minor children are entitled to custody of the children, except where the parents are shown to be unsuitable persons to be entrusted with the care, control, and education of the children. *See, e.g., Gilmore v. Kitson* (1905), 165 Ind. 402, 74 N.E. 1083; *Combs v. Gilley* (1941), 219 Ind. 139, 36 N.E.2d 776; *State*

---

4. Acts 1953, ch. 112, in introducing the Probate Code, begins in part, with:

AN ACT to establish a probate code governing the rights, and affairs of . . . guardianships, the administration thereof and procedure thereunder, and *repealing all laws and parts of laws in conflict therewith.*

(Our emphasis.)

*ex rel. Gregory v. Superior Court, etc.* (1961), 242 Ind. 42, 176 N.E.2d 126; *Sanders v. Sanders* (1974), 160 Ind.App. 174, 310 N.E.2d 905; *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376.

In the context of divorce, the settled rule in Indiana is that when a divorce decree gives custody to one parent, and that parent subsequently dies, the right to custody immediately and automatically inures to the surviving parent. *Bryan v. Lyon* (1885), 104 Ind. 227, 3 N.E. 880; *Gregory, supra;* see *Gilchrist v. Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417. That is the majority view. *See Annotation,* 39 A.L.R.2d 258, 260.

"The other construction of law in Indiana is that the 'best interests' of the child are paramount to the presumption in favor of the surviving parent and therefore custody of a child is not controlled by hard and fast rules of law." *Hendrickson v. Binkley, supra* at 392, 316 N.E.2d at 379.

Judge Lowdermilk's reasoned opinion in the *Hendrickson* case, summarizing well the Indiana law in this area and guiding our decision here, recognizes and employs the majority three-step approach to the "best interest" test of custody disputes between natural parents and third parties. The analysis, as set forth in *Hendrickson,* is as follows:

> First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. Secondly, to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best interests of the child to be placed with the third party.

161 Ind.App. at 393-4, 316 N.E.2d at 380.

Insofar as this case involves the surviving parent Phillips against third parties, a showing of one of the three factors of the "best interest" test is required. *Id.,* at 394, 316 N.E.2d at 380. Such a showing, however, has not been made here. There is no evidence showing Phillips to be unfit; the trial court, moreover, entered a finding that Phillips was a fit and proper person to have the care, custody, and control of his

children. Also, the trial court's finding that the evidence fails to show voluntary relinquishment or long acquiescence is borne out in the record. Phillips exercised his visitation rights under the divorce decree and paid his child support. At the time of the entering of the temporary guardianship order following Catherine's death, Phillips's children had been living with their grandmother, Mount, for only three days.

Finally, and notwithstanding our reasoning above, Appellants cannot succeed on their petition for appointment as co-guardians of the persons of the minor children by virtue of IC 29-1-18-21. Said provision proscribes the appointment of more than one guardian of the person unless they be husband and wife. IC 29-1-18-21(a).

Appellants submit, with respect to the second issue, that the absence of home studies, and any information to be gained therefrom, rendered the trial court incapable of making an advised decision on the best interests of the children. The trial record, however, militates against Appellants' position in that the record reveals no request, as IC 31-1-11.5-22[5] requires, but merely a suggestion that the trial court order home visits:

> [Counsel for Appellants]:   . . . The Court may also may well see fit to — in aiding it to make a decision to order home studies on the parties here, by the local agencies here and the ones in California, [sic] I am not asking necessarily that it be done but I am just *suggesting* to the Court that it might be possible. [Our emphasis.]

The issue presents no error.

Appellants next allege that they were prejudiced by the trial court's apparent application of IC 34-1-14-6 (the so-called "Dead Man's Statute") in excluding Mount testimony relating to statements by the decedent which, Appellants submit, would have served to explain decedent's motive in nominating the Overbeys in her will as guardian and which would have related to Phillips's suitability for custody. They argue, essentially, that the decedent was the "person in the best position" to have personal knowledge of Phillips relating to his suitability and that such information "would not, in the natural course of events, be known

---

5. *31-1-11.5-22  Investigations and reports*

to persons outside of the household of Catherine and Harry R. Phillips, Jr." (Appellants' brief). We conclude there was no error, however.

That portion of the record relevant to this issue is as follows:

| | |
|---|---|
| Q   [Appellants' counsel] | What was or is the provision for the appointment of guardians as contained in that will? |
| A   [Mount] | She asked that Charles, her brother, Charles, and his wife be appointed guardian. |
| Q | Do you know why she made that request? |
| A | Because she felt— |
| *BY [Appellee's counsel]:* | I would request that she answer the question. [sic] |
| *BY THE COURT:* | She can answer it yes or no. |
| A | Yes. |
| Q | What was her reason? |
| *BY [Appellee's counsel]:* | May I ask a preliminary question? |
| *BY THE COURT:* | You may. |

*PRELIMINARY QUESTION*

| | |
|---|---|
| *BY [Appellee's counsel]:* | How do you know, did she tell you? |
| A | She put it in the will. |
| *BY [Appellee's counsel]:* | If she put it in the will, it speaks for itself but anything other than that is hearsay. |
| *BY [Appellants' counsel]:* | Your honor, if she did tell her this it is an obvious exception to the hearsay rule because the testimony of this witness whose testimony she is going ascribe to is not available to testify. |
| *BY [Appellee's counsel]:* | It is still hearsay in this matter. |
| *BY [Appellants' counsel]:* | It constitutes hearsay but it is an |

| | exception to the rule, your honor; the witness is not available because of her death. |
| BY [Appellee's counsel]: | Then we got the dead man rule. |
| BY THE COURT: | I am afraid we are into the dead man rule right now. I am going to sustain your objection. |

In our opinion, it is unclear from this cold record what the basis was for the trial court's sustaining objection to the question. If the basis were the Dead Man's Statute, there would be error since the Statute only applies to actions affecting assets of a decedent's estate.[6] *Jenkins v. Nachand* (1972), 154 Ind.App. 672, 290 N.E.2d 763. However, any error would not be cause for our reversal: "[i]n general, an exclusionary ruling will not be found erroneous if sustainable on any valid theory, regardless of the grounds asserted by the parties at trial. *See, Eckman v. Funderburg* (1915), 183 Ind. 208, 108 N.E. 577; *Lengyel v. Hecht* (1968), 143 Ind.App. 660, 242 N.E.2d 135." *American United Life Ins. Co. v. Peffley* (1973), 158 Ind.App. 29, 35, 301 N.E.2d 651, 655, *reh. denied* (1974), 158 Ind.App. 29, 306 N.E.2d 131. In this case, any declarations of the decedent sought by Appellants to be offered for the truth of matters asserted would be hearsay[7] and, obviously, was not admissible under any of the accepted exceptions to the hearsay rule.

Finding no reversible error, the judgment of the trial court is, in all respects, affirmed.

Lowdermilk and Young, JJ., concur.

NOTE—Reported at 383 N.E.2d 1056.

---

Sec. 22. Investigations and reports. (a) In custody proceedings after evidence is submitted upon the petition, if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. The investigation and report may be made by the court social service agency, the staff of the juvenile court, the local probation or welfare department, or a probate agency employed by the court for the purpose.

6. We agree with Phillips's suggestion that the record is susceptible of another reading that the objection was sustained on a basis of hearsay.

7. *American United Life Insurance Co. v. Peffley, supra* at 40, 301 N.E.2d at 658: "The oft-stated general rule is that declarations of a decedent offered as proof of their content are hearsay and excludable as such, unless falling within one of the exceptions to the hearsay rule." (Citing cases.)