**Cletus WILLIAMS and Margaret Williams, Appellants (Petitioners Below),**

v.

**Jerry William TROWBRIDGE, Appellee (Respondent Below).**

No. 3–980A287.

Court of Appeals of Indiana, Third District.

June 24, 1981.

fort to effect discharge when being fired in sequence without cocking it.

Roland W. Gariepy, Krueckeberg & Smith, P.C., Fort Wayne, for appellants.

Joshua I. Tourkow, Tourkow, Danehy, Crell & Rosenblatt, Fort Wayne, for appellee.

HOFFMAN, Presiding Judge.

This is an appeal of a custody award brought by the maternal grandmother and maternal step-grandfather for the custody of their grandson, Shane Douglas Trowbridge.

Upon appeal, the Court of Appeals will not weigh evidence nor resolve issues of credibility but, rather, will view only evidence most favorable to the judgment together with all logical inferences to be drawn therefrom. *Connors v. Augustine* (1980), Ind.App., 407 N.E.2d 1186. This same standard of review applies to appeals of custody awards. *D. H. v. J. H.* (1981), Ind.App., 418 N.E.2d 286.

Christa and Jerry Trowbridge were married on June 5, 1976. On August 22, 1978 a decree of dissolution was issued by the Allen Superior Court, which granted to Christa custody of Shane, the only child born of the marriage. Christa has since decided she is not able to care for the child.

For some time after the petition for dissolution of marriage was filed, the child was living with his mother at a male friend's residence. During this time, Jerry picked his son up at that residence for their visits.

Around Easter of 1979, Christa informed Jerry that her mother and stepfather (Mr. and Mrs. Williams) would be babysitting Shane while she was working two jobs, and it would be easier for Jerry to call for Shane at the Williams' residence. In August of 1979 Jerry was finally informed that Shane was actually living at the Williams'. While living there, Shane was left in the care of a babysitter a large percentage of the time.

In September of 1978, one month after the dissolution was granted, Jerry was living with his brother, using a couch as a bed, in a house which was being remodeled. At that time Christa asked Jerry to take custody of Shane, and he felt it would not be a good situation for Shane at that time. Again in January of 1979, Christa asked Jerry and his then fiancee' if they would want custody of Shane once they were married, and they stated that they would.

At the time of the hearing, Jerry was remarried, lived in a two-story apartment and was employed full-time. Jerry saw his

son on an average of two times a month immediately after his marriage with Christa was dissolved, and the visits increased to an average of five times a month by the time of the hearing.

On October 25, 1979, Mr. and Mrs. Williams filed a petition for custody. On November 9, 1979 Jerry filed a petition for modification of the original custody decree. The trial court denied Mr. and Mrs. Williams' petition for custody and granted Jerry's petition for modification of custody.

Mr. and Mrs. Williams present on appeal the issue of whether or not the trial court abused its discretion by statements made at the end of the hearing. They contend the trial court abused its discretion by stating it had no discretion in awarding custody of the child, and thus its ruling was contrary to law.

■■■ This Court's standard for reversal for abuse of discretion is clear. An abuse of discretion that would permit this Court to reverse a trial court's determination must be an erroneous conclusion reached by the trial court with is clearly against logic and the facts and circumstances before the court or reasonable inferences to be drawn therefrom.

Summerlot v. Summerlot (1980), Ind. App., 408 N.E.2d 820;

Dunbar v. Dunbar et al. (1969), 145 Ind. App. 479, 251 N.E.2d 468.

The manifest abuse of discretion standard is equally applicable to cases involving modification of child custody. D. H. v. J. H., supra.

The statements made by the trial court which are objected to by the Williams when read in context are not sufficient to establish that the trial court reached an erroneous conclusion in this case. The following are excerpts from statements made by the trial court:

"There can be no question, it's uncontroverted, that a change in circumstances occurred since the Court initially awarded custody to the mother. The whole situation is made more difficult because in this type of situation where grandparents are contesting against the biological parent, there is superimposed upon the Court the various findings and rulings which the Court dare not summarily reverse. . . . The case law in this area is so abundantly clear that the Court simply, except for applying the fact situation, has absolutely no discretion and any reading of case law in this area would clearly indicate that. . . .

The only way that the Court has a choice is if the facts prevent the Court from doing what the case law dictates.

\* \* \* \* \* \*

"The law books clearly indicated that unless both biological parents are incapable of assuming the right, they have an abundance of rights which are difficult at best to understand."

■■■ The Williams contend that the trial court either misunderstood or misapplied the law in Indiana. To begin with, this Court presumes that a trial court knows the law in Indiana. However, in this case counsel for Jerry quoted an Indiana case in his closing argument which advised the trial court of the presumption in favor of natural parents but that the presumption could be overcome if the parents were unsuitable.

In a case similar to the one before us, Hendrickson v. Binkley (1974), 161 Ind.App. 388, 316 N.E.2d 376, this Court set up a three-part test for rebutting the presumption in favor of natural parents. In Hendrickson this Court held that although the child had been awarded to his mother by the court at the time of the divorce, after the death of the mother, the father was entitled to custody of the child over the maternal grandparent. The Court laid out the three-step test as follows:

"First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. Secondly, to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger

the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best interests of the child to be placed with the third party."

316 N.E.2d at 380.

The comments made by the trial judge in the case before us indicated that in applying the facts before him to the governing case law, the Williams did not meet the burden which was upon them to prove that Jerry was not entitled to custody of Shane.

It is within the discretion of the trial court to award custody of children consistent with their best interests. *D. H. v. J. H., supra.* Indiana cases recognize the common-law rule that the natural parents of a minor child are entitled to custody of the child, unless they are unsuitable to be entrusted with the care of the child. *Sanders v. Sanders* (1974), 160 Ind.App. 174, 310 N.E.2d 905.

The record shows that Jerry continued visiting Shane and paying support for Shane from the time he and his son were separated until the custody award. Once Jerry was remarried and living in a two-story apartment, he expressed a desire for custody of Shane. Such evidence fails to show any long acquiescence, voluntary relinquishment or unfitness.

While contradictory evidence was also presented, this Court is not in a position to reweigh the evidence or judge the credibility of those witnesses. Deference must be given by the reviewing court to the trial court due to its opportunity to judge demeanor and credibility of witnesses. *Cornett v. Cornett* (1980), Ind.App., 412 N.E.2d 1232.

While some of the words chosen by the trial judge may have been unfortunate, when read in context and viewed in light of the evidence before him, the phrases do not warrant a finding that he abused his discretion in making a custody award which was contrary to law. The judgment of the trial court is affirmed.

Affirmed

GARRARD and STATON, JJ., concur.