In the Matter of the PATERNITY OF
Larry Douglas FOX, Jr.

Lloyd and Liz BEYERS,
Intervenors, Appellants,

v.

Larry Douglas FOX, Sr., Appellee.

No. 03A01–8610–JV–273.

Court of Appeals of Indiana,
First District.

Oct. 26, 1987.

William H. Kelley, Joseph D. O'Connor, III, Bunger, Robertson, Kelley & Steger, Bloomington, for appellants.

John A. Stroh, Sharpnack, Bigley, David & Rumple, Columbus, for appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Intervenor-appellants, Lloyd and Liz Beyers (the Beyers), appeal the judgment of the Bartholomew Juvenile Court which granted permanent custody of Larry Douglas Fox, Jr. (Doug) to Larry Douglas Fox, Sr. (Fox), after finding Fox to be the natural father of Doug.

We affirm.

### STATEMENT OF THE FACTS

Fox, who was born in 1948, graduated with honors from Purdue University and is employed as a mechanical engineer by Cummins Engine Company, where he earns in excess of $40,000.00 per year. Although he was still married to his first wife, Fox began a relationship with Joyce Beyers (Joyce) in 1970. This relationship produced Doug, who was born on April 8, 1973. Following the birth Fox lived with Joyce and Doug for only two or three months in 1973, but after his marriage to his first wife was dissolved in 1974, he lived with Joyce and Doug from July 1974 to early 1977. Fox and Joyce never married and, after they separated in early 1977, Joyce retained custody of Doug, although Fox continued to see Doug on weekends and school vacations, and consistently contributed financially to his support. Despite the fact that Fox married his current wife, Darlene, then a high-school sophomore, in 1977, he resumed his relationship with Joyce. Their stormy affair continued until February 24, 1986, when Joyce obtained a temporary restraining order against Fox because she feared physical harm from him. On March 29, 1986, Joyce drowned when she fell from a boat piloted by Fox. An investigation was conducted into the circumstances surrounding her death.[1] After Joyce's death Doug lived with the Beyers, his aunt and uncle.

On April 22, 1986, Fox filed a paternity petition in Bartholomew Juvenile Court, seeking to be established as Doug's natural father and requesting custody of Doug. The Beyers received notice of Fox's petition the next day, and a hearing on the matter was scheduled for June 6, 1986. On May 2, 1986, the Beyers filed a petition for appointment as Doug's guardians in Law-

---

1. An oral argument held in this cause revealed that, during the pendency of this appeal, Fox was indicted for Joyce's murder. His trial is scheduled to begin December 7, 1987.

rence Circuit Court, their and Doug's county of residence. On May 14, the Beyers and Doug filed their consent to the guardianship appointment, waiving notice of a hearing. The guardianship hearing was held that same day, and the order appointing the Beyers as Doug's guardians was also entered on May 14. Fox was not given notice of the guardianship proceeding, but upon learning of it filed a Motion to Intervene. The Beyers then entered their appearances as intervenors in the paternity proceeding. They also moved to transfer the paternity proceeding to Lawrence Circuit Court, contending that it was the county of preferred venue to the exclusion of Bartholomew County. This motion was denied. The Beyers then requested that the Bartholomew Juvenile Court confine its consideration of the issues to the question of paternity, and defer to the Lawrence Circuit Court on the question of custody, inasmuch as Fox had intervened in the guardianship proceeding. This motion was also denied.

A hearing on the paternity petition was held on June 16, 1986. Fox testified that he had maintained a close relationship with Doug since his birth, that Doug enjoyed a close relationship with Fox's current spouse, Darlene, and Travis, the son of Fox and Darlene, and that he, Fox, had the means to provide a comfortable home for Doug. Darlene, Fox's brother, and Christina Fox, Fox's 20–year–old daughter from his first marriage, all testified as to Fox's fitness as a parent. There was no evidence that Fox had ever mistreated Doug. However, the evidence also showed that in 1973 Fox was charged with two counts of assault and battery with intent to kill. The charges resulted from Fox having wounded two men with his .44 magnum pistol, which ended a fight Fox's brother had had with the two men. Fox pleaded guilty to one count of aggravated assault and battery and one count of assault and battery, for which he served a 90–day imprisonment followed by five year's probation. Fox admitted being in fights with two other men, striking Joyce, and shooting his television once when it would not work. He even admitted to having tatooed his name on the

buttocks of both Joyce and Darlene. He also was aware of the February 1986 temporary restraining order and the investigation then being conducted concerning Joyce's death. According to Fox, Joyce and he had gone boating, she had consumed five or six beers, and she had fallen overboard and drowned, despite his attempts to rescue her. Lloyd Beyers and his parents then testified as to his, Lloyd's, fitness to be Doug's guardian, and they also testified negatively as to Fox's fitness as a parent.

On June 23, 1986, the trial court entered its findings of fact. It found Fox to be Doug's natural father and that there had been no showing either that Fox was not a suitable and proper person to have custody of him or that it was in Doug's best interest to be placed with the Beyers. Given the "strong presumption" that a child should be in the custody of his natural parents, the trial court granted temporary custody of Doug to Fox, pending the results of a welfare department home study and an in-camera interview of Doug. *Record* at 62.

The in-camera interview was conducted on July 3, 1986. The results of the home study were filed on August 6, 1986, the welfare department recommending that Doug remain in Fox's custody. On August 8, 1986, the trial court, having considered the evidence presented at the hearing, the home study, and its interview of Doug, granted permanent custody of Doug to Fox. The trial court also denied the Beyers' Petition for Additional Hearing, which they had filed in hopes of presenting further evidence. The Beyers then instituted this appeal. The oral argument in this cause also disclosed that, during the pendency of this appeal, the Beyers filed two petitions to modify custody. The first one, based on the indictment, was denied and no appeal was taken from that ruling. The trial court did not rule on the second petition. Instead, it certified to this court the question of whether a trial court can entertain a custody modification petition during the pendency of an appeal from the original custody order.

## ISSUES

Presented for our review are the Beyers' contentions that the Bartholomew Juvenile Court:

I.  Erred in exercising jurisdiction of the custody determination;

II.  Applied an incorrect standard in awarding custody of Doug to Fox;

III.  Committed error in awarding custody of Doug to Fox, in light of the evidence; and

IV.  Whether the trial court has jurisdiction to entertain a petition to modify custody during the pendency of an appeal from the original custody order.

## DISCUSSION AND DECISION

### ISSUE I: *Exclusive Jurisdiction*

The Beyers claim the Bartholomew Juvenile Court erred in exercising exclusive jurisdiction of the custody determination, given their appointment as Doug's guardians by the Lawrence Circuit Court. The Beyers argue that, by awarding custody of Doug to Fox, the Bartholomew Juvenile Court implicitly overruled the Lawrence Circuit Court and removed them as Doug's guardians.

■■■ Pursuant to statute, paternity proceedings may be commenced by a putative father and venue lies in the county in which the child, the mother, or the alleged father resides. IND.CODE 31–6–6.1–4. Thus, it was proper for Fox to file his petition in Bartholomew County, where he resides. Proper venue for the guardianship proceeding was restricted to Lawrence County, where Doug resided. IND.CODE 29–1–18–7(a)(1). Both counties were vested with jurisdiction in the respective proceedings. IND.CODE 31–6–2–1(a)(3) (paternity); IND.CODE 29–1–18–4(a) (guardianship). It is well settled that two courts of concurrent jurisdiction cannot deal with the same subject matter at the same time. *State ex rel. American Fletcher National Bank and Trust Co. v. Daugherty* (1972), 258 Ind. 632, 283 N.E.2d 526. Once jurisdiction over the parties and the subject matter has been secured, it is retained to the exclusion of other courts of equal competence until the case is resolved, and the rule applies where the subject matter before the separate courts is the same, but the actions are in different forms. *Id.* Exclusive jurisdiction over a particular cause of action vests when the complaint or other equivalent pleading or document is filed. *State ex rel. Long v. Marion Superior Court* (1981), 275 Ind. 533, 418 N.E.2d 218; Ind.Rules of Procedure, Trial Rule 3.

■ Here, the separate proceedings were in different forms, but as Fox's paternity was not contested, the crux of both actions necessarily involved the same persons and issue, namely, who was to be awarded custody of Doug. As Fox's petition for custody was filed on April 22, 1986, and the Beyers's petition for guardianship was not filed until May 2, 1986, the Bartholomew Juvenile Court properly exercised exclusive jurisdiction of the subject matter.

### ISSUE II: *Incorrect Standard*

■ The Beyers argue that the trial court applied an incorrect standard in making the custody determination. They maintain that the burden of proof should have been on Fox to show that their guardianship should have been terminated, but instead, the trial court clothed Fox with a strong presumption, requiring them to prove that he was not a suitable person to have custody of Doug.

In custody disputes between natural parents and third parties, a three-step approach is used. This analysis is as follows:

First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. Secondly, to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best inter-

ests of the child to be placed with the third party.

*Hendrickson v. Binkley* (1974), 161 Ind. App. 388, 393–4, 316 N.E.2d 376, 380, *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98 (1975). The presumption may only be rebutted by "clear and cogent" evidence. *Id.* at 395, 316 N.E.2d at 381.

In the case at bar, the trial court, in its findings, stated:

> There is a strong presumption that a minor child should be under the care, control, and custody of the natural parent.... This is not an absolute presumption, however, and it may be overcome by a showing that the natural parent is unfit or that it would be in the best interest of the child to be placed with a third party.

*Record* at 62.

While it is not a verbatim recitation of the analysis quoted from *Hendrickson, supra,* the trial court's statement is a satisfactory summary of the law. Indeed, the Beyers, in their brief, concede that it is an appropriate standard in custody disputes between a natural parent and third parties. The Beyers contend that the three-step approach is not applicable here because they had been appointed Doug's guardians. However, we have decided the issue of jurisdiction adversely to the Beyers. Therefore, the trial court applied the correct standard in making the custody determination.

ISSUE III: *Error in Evidence*

The Beyers claim the trial court committed error in awarding custody of Doug to Fox, in light of the evidence presented at trial.

Child custody determinations rest in the sound discretion of the trial court, and will not be disturbed on appeal unless the trial court has abused its discretion. *In re Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457. A trial court has abused its discretion when its decision is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* Moreover, as discussed in Issue II, in a custody dispute between a parent and a third party, although the child's best interest is of great importance, it is presumed that it is in the best interest of the child to be placed in the custody of the parent. *Hendrickson, supra.*

■ Based upon the evidence, we cannot hold that the trial court abused its discretion. The record shows that Fox has a relatively well-paying job and can provide a comfortable home for Doug. Doug is close to Travis, Fox's son by his current spouse, and Christina, Fox's daughter by his first wife. Although Fox admitted to episodes of violence and other aberrant behavior, there was no evidence that he has ever mistreated Doug, which even Lloyd Beyers and his parents had to admit. Although Fox has been indicted for Joyce's death, that fact is not before us, but arose during the pendency of this appeal, and was the subject of a custody modification petition which was denied by the trial court and was not appealed. We cannot consider it here. The welfare department home study, which the Beyers requested, recommended that Fox have custody of Doug. In addition, the trial court held an in-camera interview with Doug. While it appears the interview was conducted contrary to IND. CODE 31–6–6.1–11(d), which requires that counsel be permitted to be present and a record made of the interview, no objection was made and the issue was not raised in either the Beyers' motion to correct error or their brief. Thus, any impropriety in the in-camera interview procedure has been waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

Based upon our standard of review and our examination of the record, the trial court did not abuse its discretion in awarding custody of Doug to Fox.

ISSUE IV: *Certified Question*

■ The trial court has certified to this court the question of whether a trial court has jurisdiction to entertain a petition to modify custody during the pendency of an appeal from the original custody order.

However, there exists no available procedure enabling a trial court to certify a question to this court for an advisory opinion. We can accept appeals only from final

judgments and certain interlocutory orders. Ind. Rules of Procedure, Appellate Rule 4(B).

Accordingly, for the above reasons the judgment of the trial court is in all things affirmed.

Judgment affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.