In re the GUARDIANSHIP OF Annie Leigh STACKHOUSE, Minor child.

Larry STACKHOUSE,
Petitioner–Appellant,

v.

Connie Jean STACKHOUSE,
Respondent–Appellee.

No. 43A03–8803–CV–82.

Court of Appeals of Indiana,
Third District.

May 31, 1989.

---

Michael L. Valentine, Valentine & Miner, Warsaw, for petitioner-appellant.

Eugene N. Chipman, Sr., Chipman & Chipman, Plymouth, for respondent-appellee.

GARRARD, Presiding Judge.

In 1985 the parents of three year old Annie Leigh Stackhouse died from injuries sustained in an auto accident. Since then she has been cared for by Larry and Connie Stackhouse. Mr. Stackhouse is Annie's grandfather; Mrs. Stackhouse her step-grandmother. Mr. Stackhouse promptly petitioned to be appointed guardian of the person of Annie and amended that petition to request that he and Mrs. Stackhouse be appointed co-guardians of the person. On July 12, 1985 they were appointed co-guardians.

Then sometime in 1986 the Stackhouses separated and Mrs. Stackhouse petitioned to dissolve their marriage. Dissolution was granted in 1987 and shortly thereafter Mr. Stackhouse petitioned to have Mrs. Stackhouse removed as co-guardian.

Trial was held and the court determined that Mrs. Stackhouse rather than Mr. Stackhouse should remain as sole guardian of the person of Annie Stackhouse. The court also made some determination preserving visitation and providing for consent to medical care with which we are not further concerned for purposes of this appeal.

In making its determination the court did not find that Mr. Stackhouse was an unfit person. It did find that Mrs. Stackhouse had effectively become the child's mother and that she demonstrated a greater commitment to caring for Annie. The court also found that to the extent Mr. Stackhouse's natural blood tie was to be weighed in the determination, it was overcome by acquiescence and voluntary relinquishment through his actions in having Mrs. Stackhouse appointed co-guardian and allowing her to come into the position of being the child's de facto mother.

Mr. Stackhouse appeals contending that the court erred by failing to give proper consideration to the fact that he is Annie's blood relative while Mrs. Stackhouse is not.

He contends that the principle of *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376 should extend to situations such as this, and that indeed the preference for maintaining blood ties is one of the root convictions of our civilization.

*Hendrickson* was specifically concerned with the rights, or rather the presumptions accorded to, natural parents. In that case custody had been awarded to the mother following a divorce and she had gone to live with her parents. Following the mother's death the father had petitioned for custody and having failed sought *habeas corpus* against the maternal grandfather. The Court of Appeals found for the father stating:

> [T]he court cannot determine that it is in the best interests of the child to be placed within the custody of a third party, as against the presumption favoring the natural parent, unless the trial court has first determined from clear and cogent evidence that there is either unfitness of the appellant, long acquiescence, or voluntary relinquishment.

316 N.E.2d at 381. *See also Gilchrist v. Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417 (not error to award custody to mother over stepmother); *Paternity of Fox* (1987), Ind.App., 514 N.E.2d 638 (natural father preferred over aunt and uncle); *Guardianship of Phillips* (1978), 178 Ind.App. 220, 383 N.E.2d 1056 (court properly denied ap-

pointment of guardians and granted custody to father).

In addition Mr. Stackhouse points out that IC 29–1–18–10 provides in part that in appointing guardians or co-guardians of the person the court shall select those "must suitable and willing to serve" having due regard to "(5) the relationship by blood or marriage to the person for whom the guardianship is sought."

Initially, we note that under the mandate of IC 29–1–18–21, when the marriage of the Stackhouses was dissolved, they were no longer eligible to serve as co-guardians of the person. Furthermore, the general grounds for removal of a guardian include unsuitability, IC 29–1–18–25, and the court is invested with discretion in proceedings to remove or substitute guardians. *Guardianship of Brown* (1982), Ind.App., 436 N.E. 2d 877.

We agree, of course, with the proposition that in selecting persons to serve as guardian of the person, consideration should be given to their blood relationship to the ward. Such consideration is supported by the assumption that a person related to the ward will be more likely to treat the ward with patience and affection than a stranger. *See, e.g.,* annot. 65 A.L.R.3d 991, superseding 21 A.L.R.2d 880; 30 A.L.R.3d 290.

On the other hand, none of the cases cited by Mr. Stackhouse, nor those revealed by our research, have actually created a presumption in favor of blood relationship in child custody matters apart from that

favoring a natural parent. The American Law Reports annotations, *supra,* appear to bear this out as the general rule. This, also, appears to us to be the wiser course. It is, after all, the best interests of the child that we are always concerned with. Once the search for a custodian extends beyond the child's natural parents a host of other factors, including the personal attributes of a proposed guardian, become relevant in determining the person most suitable to discharge the obligations of that office.

In the present case Mrs. Stackhouse had become closely associated with Annie through her role as stepgrandmother and as duly appointed guardian of the person. It appears that the court weighed her established relationship as "de facto mother" against Mr. Stackhouse's factual and blood relationship and concluded that the best interests of the child dictated that Mrs. Stackhouse should continue as the sole guardian. We find no abuse of discretion in that determination.

We, therefore, affirm.

SHIELDS, P.J., and HOFFMAN, J., concur.