# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**BRYAN LEE CIYOU**
**LORI B. SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MATTER OF THE GUARDIANSHIP OF L.R.T. and A.J.B., | ) ) ) | |
| R.L. and P.L., (Guardians), | ) ) | |
| Appellants-Petitioners, | ) ) | |
| vs. | ) ) | No.  39A04-1208-GU-398 |
| A.B. and R.B., (Parents), | ) ) | |
| Appellees-Respondents. | ) ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable W. Gregory Coy, Special Judge
Cause No. 39C01-0711-GU-43

**December 10, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

R.L. and P.L. ("Guardians") appeal an order terminating their guardianship of L.T. and A.J.B. ("the Children") upon the motion of A.B. ("Mother"). Guardians present the sole consolidated issue of whether the order is clearly erroneous. We affirm.

**Facts and Procedural History**

Mother, who is the granddaughter of Guardians, gave birth to L.T. in 2004. L.T.'s biological father has not been involved in her life. In 2006, Mother married R.B. ("Father") and gave birth to A.J.B. A.J.B. was diagnosed with Downs Syndrome. He is high-functioning but has significant delays in verbal communication.

Mother and Father had difficulty maintaining a residence and employment sufficient to support the Children and Father's child from another relationship.[1] After some lengthy visits, L.T. and A.J.B. came to live with Guardians in September of 2007. The guardianship was formalized in November of 2007, so that Guardians could obtain medical insurance benefits for the Children. The Children thrived in Guardians' care.

On November 9, 2011, Mother filed a motion to terminate the guardianship. The Guardians objected to the proposed termination. The trial court heard evidence on the contested termination at hearings conducted on July 5 and 19, 2012. On July 31, 2012, the trial court granted Mother's petition and ordered that custody of the Children be transferred immediately. The trial court specifically found that Guardians had provided exemplary care for the Children, but also found that Mother and Father were currently able to provide for the

---

[1] Father has a child three months older than A.J.B. She lives with Father's mother.

Children's needs.

Guardians appealed and sought an emergency stay of the order. This Court granted the stay and ordered the appellate filings to be expedited.

**Discussion and Decision**

Indiana Code Section 29-3-12-1(c)(4) provides that the trial court may terminate any guardianship when the guardianship is no longer necessary. Guardians, who claimed that continuation of the guardianship was necessary because of A.J.B.'s special needs and his parents' alleged continuation of financial instability, requested that the trial court enter findings and conclusions pursuant to Indiana Trial Rule 52.

We thus employ a two-tiered standard of review; we first determine whether the evidence supports the findings, and then consider whether the findings support the judgment. In re Guardianship of L.L., 745 N.E.2d 222, 227 (Ind. Ct. App. 2001), trans. denied. The trial court's findings and judgment will not be set aside unless they are clearly erroneous. Id. A judgment is clearly erroneous when it is unsupported by the conclusions drawn, and conclusions are clearly erroneous when they are not supported by findings of fact. Id. A judgment is also clearly erroneous when the trial court has applied the wrong legal standard to properly found facts. Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005). In reviewing the order being appealed, we will neither reweigh the evidence nor assess witness credibility. In re M.B. and P.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. Rather, we will consider only the evidence that supports the trial court's judgment together with all reasonable inferences to be drawn therefrom. Id.

3

Guardians do not allege that the trial court's findings of fact are unsupported by the evidence. Rather, Guardians contend that they are de facto custodians and the trial court failed to employ the legal standard applicable to the established facts in this context. More particularly, Guardians argue that "presumably, with their de facto status, there would be no burden of proof as with an initial custody determination or Mother and Father/Step-Father would have to prove a substantial change in circumstances to have custody modified back to them." Appellants' Brief at 27. According to Guardians, "this appears to be an unanswered question of law." Appellants' Brief at 27. As best we can discern, Guardians maintain that the parents should bear the burden of showing the Children's best interests are served by a custody modification.

Indiana law defines a "de facto custodian" as someone who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least six months if the child is less than three years of age or one year if the child is at least three years of age. Ind. Code § 31-9-2-35.5. "The apparent intent of the de facto custodian statute is to clarify that a third party may have standing in certain custody proceedings, and that it may be in a child's best interests to be placed in that party's custody." In re K.I., 903 N.E.2d 453, 462 (Ind. 2009) (citing In re L.L., 745 N.E.2d at 230).

In K.I., our Indiana Supreme Court described in detail the legal framework applicable to custody disputes between a natural parent and a third party. In particular, K.I. involved a parent's action to take custody of his daughter and in so doing terminate her grandparents' guardianship over her. First, the Court observed that custody modifications are reviewed for

4

an abuse of discretion, with a preference for deference to our trial judges in family law matters. Id. at 457. The Court then recognized that, pursuant to Indiana Code section 31-14-13-6, child custody may not be modified unless the modification is in the best interests of the child, and there is a substantial change in one or more of the factors that the court may consider under section 31-14-13-2 and, if applicable, section 31-14-13-2.5.[2] Id.

However, the Court in K.I. clearly reiterated that the non-parent must overcome the "important and strong presumption" that a child's best interests are best served by placement with his or her natural parent. Id. at 459 (citing In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind. 2002)). The burden is one of clear and convincing evidence proving that the child's best interests are "substantially and significantly" served by the third-party placement. Id. The Court specifically rejected a "burden-shifting regime" placing the third party and the parent on a level playing field, as this would be inconsistent with long-standing State precedent. Id. at 460.

Although the party seeking a change of custody must persuade the trial court that modification is in the best interests of the child and there is a substantial change in one of the

---

[2] The non-exhaustive list of relevant factors includes (1) the age and sex of the child, (2) the wishes of the child's parents, (3) the wishes of the child, (4) the interaction and interrelationship of the child with the child's parents, siblings, and any other person who may significantly affect the child's best interest, (5) the child's adjustment to home, school, and community, (6) the mental and physical health of all individuals involved, (7) evidence of a pattern of domestic or family violence by either parent, and (8) evidence that the child has been cared for by a de facto custodian.

Section 2.5 is applicable only if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian. If so, in addition to the factors listed in section 2, the court shall consider (1) the wishes of the child's de facto custodian, the extent to which the child has been cared for, nurtured, and supported by the de facto custodian, the intent of the child's parent in placing the child with the de facto custodian, and the circumstances under which the child was allowed to remain in the custody of the de facto custodian (including whether placement was to allow the parent to seek employment, work, or attend school). Ind. Code § 31-14-13-2.5(b). Pursuant to subsection (d), the court shall award custody of the child to the de facto custodian if the court determines that it is in the best interests of the child.

5

afore-mentioned statutory factors, "these are modest requirements where the party seeking to modify custody is the natural parent of a child who is in the custody of a third party." Id. The "parent comes to the table with a strong presumption" and the burden imposed by the statutory requirements is "minimal." Id. When the parent meets this "minimal burden," the third party must prove by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another person. Id. at 461 (citing B.H., 770 N.E.2d at 287). If the third party carries the burden, custody of the child remains in the third party. Id. at 461. "Otherwise, custody must be modified in favor of the child's natural parent." Id.

In short, in a custody dispute between a parent and a third party, even where the parent seeks to re-obtain custody, the burden of proof is always upon the third party. See id. As such, Guardians cannot prevail upon their suggestion that the trial court should have disregarded a parental presumption because Guardians have provided long-term care for the Children. The trial court's order referenced the language of B.H. and there is no indication that an incorrect legal standard was employed.

The parties agree that the reason for the Children's placement with Guardians was Mother's and Father's lack of stable housing and employment. After hearing evidence of current conditions, the trial court found that Father was employed in a factory making $16.63 per hour and Mother was employed at Subway, they had decided to buy a house that would provide suitable family accommodations, and Mother had made inquiries to address A.J.B.'s special educational needs. The trial court found that both Children could be expected to

6

make the necessary adjustments. Guardians' strenuous argument that Mother and Father have shown instability in the past and likely cannot adequately address A.J.B.'s special needs in the present is an invitation to reweigh the evidence. This Court is prohibited from reweighing the evidence. In re B.H., 770 N.E.2d at 288. Accordingly, we decline to do so.

Affirmed.

CRONE, J., concurs.

RILEY, J., dissents with separate opinion.



# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MATTER OF THE                    )
GUARDIANSHIP OF L.R.T. and A.J.B.,         )
                                           )
RICHARD HENRY LONGVILLE and                )
PENNY E. LONGVILLE,                        )
                                           )
  Appellants-Petitioners,        )
                                           )
    vs.                )   No.  39A04-1208-GU-398
                                           )
ASHLIE and RANDY BURRELL,                  )
                                           )
  Appellees-Respondents.         )

**RILEY, Judge, dissenting**

 I respectfully disagree with the majority's decision to affirm the trial court's Order, terminating the guardianship over the minor children and ordering an immediate return to their parents. In affirming the termination of the existing guardianship held by a third party, the majority relies on our supreme court's legal framework instituted in *K.I. ex rel J.I. v. J.H.*,

903 N.E.2d 453 (Ind. 2009). Discussing *K.I.*, the majority reaches the overarching and simplistic conclusion that "in a custody dispute between a parent and a third party, even where the parent seeks to re-obtain custody, *the burden of proof is always on the third party*." Slip op. p. 6 (emphasis added).[3] I disagree with the majority's reading of *K.I.*

The statutory standard for terminating a guardianship is provided in Indiana Code section 29-3-12-1(c). Under this statute, a guardianship may be terminated whenever it is no longer necessary. Ind. Code § 29-3-12-1(c)(4). Indiana courts, however, "have generally applied a more detailed test than required by the plain language of the [guardianship] statute." *Froelich v. Clark*, 754 N.E.2d 222, 227 (Ind. Ct. App. 2001), *trans. denied*. Instead, a standard similar to the one used in child custody modifications, which takes into account parental rights and the best interests of the child, is applied. *Id*.

In *K.I.*, our supreme court developed a two-part test to determine whether a guardianship of a minor child held by a third party should be terminated in favor of a natural parent. *See K.I.*, 903 N.E.2d at 460. First, a parent wishing to terminate a guardianship has the burden to show that doing so is in the child's best interest and there is a substantial change in one or more of the child custody factors.[4] *See id*. There is a "strong presumption

---

[3] The majority also quotes to "[t]he [*K.I.*] court specifically rejected a 'burden-shifting regime' placing the third party and the parent on a level playing field, as this would be inconsistent with long-standing State precedent." Slip op. p. 5 (quoting *K.I.*, 903 N.E.2d at 460). However, this quote alludes to our supreme court's interpretation of the party's argument that the *K.I.* facts should be controlled by the distinction between the statutory factors required to obtain initial custody and those required for a subsequent custody modification. *See K.I.*, 903 N.E.2d at 460. In its analysis of this claim, our supreme court rejected the argument as not dispositive to the facts at hand. *See id*. As such, the supreme court did not "specifically reject a burden-shifting regime" within the legal framework of the specific evidence before it. *See* slip op. p. 5. Rather, to the contrary, the *K.I.* court explicitly imposed one, albeit "minimal" and "technical." *See K.I.*, 903 N.E.2d at 460.

[4] These statutory factors are enumerated in Indiana Code sections 31-14-13-2 & -2.5.

that a child's interests are best served by placement with the natural parent." *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002). That means that while the burden on the natural parent certainly exists, "these are modest requirements where the party seeking to modify custody is the natural parent of a child who is in the custody of a third party." *K.I.*, 903 N.E.2d at 460.

Once a natural parent overcomes this minimal burden, the burden shifts to the third party to show that the "best interests [of the child] are substantially and significantly served by placement with" the third party. *B.H.*, 770 N.E.2d at 287. This prong can be satisfied by proving, with clear and convincing evidence, unfitness on the part of a parent, long acquiescence in the third party's custody, or "voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *Id* at 286 (quoting *Hendrickson v. Binkley*, 316 N.E.2d 376, 380 (Ind. Ct. App. 1974), *cert. denied* 423 U.S. 868 (1975)). A trial court, however, is not limited to these three factors when determining whether the presumption in favor of the natural parent has been overcome. *K.I.*, 903 N.E.2d at 459. If the third party fails to carry its burden, custody will be granted to the natural parent. *Id*. at 461.

In its analysis of the evidence, the trial court conflated both prongs of the test, squarely placing the evidentiary burden on the Guardians and merely applying the latter part—substantial and significant advantage. Because the trial court used an incorrect legal standard in terminating the minor children's guardianship, I am convinced that employing the

proper two-prong test, as proponed by our supreme court in *K.I.*, reaches a different result.

Although the natural parent comes to the table with a strong presumption in his favor and with only a low burden to overcome—a substantial change in any one of the statutory factors included in I.C. § 31-14-13-2 & -2.5—here, Mother and Father failed to meet this minimal threshold. Initially, the grandparents accepted guardianship over the minor children because Mother and Father "were being evicted from a home that they were attempting to buy and needed somewhere for the children to go." (Appellant's App. p. 11). The evidence reflects that at the filing of the petition to terminate the guardianship, Mother and Father's situation is still marred by instability and financial insecurity. During the five years that the minor children have resided with the Guardians, Mother and Father have moved residences eight times, with an additional ninth move scheduled for shortly after the trial court's hearing. Of those eight moves, the homes were located in three different school districts. Mother and Father have been evicted from homes, have been without heat, resulting in heating the residence during winter by a free standing kerosene unit, and had the water cut off. They have relied on the generosity of their church to pay an electricity bill. When Mother and Father were without housing, they found refuge in the overcrowded home of their own parents. Since 2005, Mother had held nine different jobs, and Father has held approximately twelve various positions, interspersed with bouts of unemployment.

Although Mother testified that their income is sufficient to provide for both children and the petition to terminate the guardianship is not born out of a need to get A.J.B.'s SSI's check to survive, the evidence submitted to the trial court reflects otherwise. In a letter

11

addressed to the trial court, Mother details her monthly budget indicating that, after paying

for her and Father's basic needs, only $185 per month would be left over to take care of the

minor children—one of which has special needs. This is directly contradicted by Mother's

own testimony at trial where she testified to a remaining monthly amount of $565.

In other words, Mother and Father cannot establish a change in their way of life—let

alone a substantial change—that necessitated the guardianship in the first place. *See* I.C. §

31-14-13-2.5(4). Therefore, they have not carried their minimal burden to terminate the

guardianship and to be granted custody over their minor children.

Even assuming *arguendo*, that Mother and Father were successful in satisfying their

burden, I must nevertheless conclude that the Guardians proved by clear and convincing

evidence that the children's best interest is substantially and significantly served by their

current placement.

L.R.T. has resided with her grandparents since she was three years old—she is

currently seven—and A.J.B. has been out of his parents' custody since he was eight months

old—he is currently five. During this time, Mother visited with the children a total of four

times, each time focusing her attention on L.R.T. while almost completely ignoring A.J.B.

The trial court noted that the Guardians have a parent-child relationship with both children.

Especially with respect to A.J.B., the trial court found that he is at an emotional risk because

of his Down's Syndrome and needs structure and support to continue functioning well and to

develop up to his maximum potential. Any change in routine may produce a risk of

deterioration of his functioning. Although Mother testified that she had "looked into issues

12

involving the special needs of [A.J.B.]," she clarified this statement as meaning that she had spoken with her landlord whose daughter appears to be a special needs speech therapist. (Appellant's App. p. 11). It is clear that Mother and Father do not have the ability or inclination to provide for A.J.B.'s extra-ordinary necessities. On the other hand, the Guardians cater to the children's every need and accommodate A.J.B.'s therapy and very specialized care. They encourage both children to reach their best potential and nurture them every step of the way.

The long acquiescence of the children in their Guardians' custody—to the point that the Guardians are the only parents A.J.B. remembers—has cultivated a strong bond, a deep mutual affection, and a safe and stable environment to mature. Uprooting the children without any notice and dropping them in the unstable and insecure lives of parents they barely know and an environment they are unfamiliar with, would seriously mar and endanger their future happiness and wellbeing. In fact, returning the minor children to Mother and Father's care immediately after a long acquiescence in their grandparents custody, as decided by the trial court and affirmed by the majority, sentences them to a fate worse than a Child In Need of Services where a parent must initially adhere to a visitation schedule and a transition phase prior to full custody. Based on the evidence before me, I am convinced that the children's best interest is substantially and significantly served by their current placement. The trial court's decision to grant the petition to terminate guardianship was clearly erroneous and should be reversed.