KENNETH M. HARRIS *v.* MARY JOHNSON

[No. 471A64. Filed October 13, 1971.]

*Douglas D. Church, Roberts & Church,* of Noblesville, for appellant.

*James P. Buchanan,* of Lebanon, for appellee.

SHARP, J.—On September 18, 1969, the Appellee Mary Johnson filed her application for letters of guardianship for David Lee Harris in the Superior Court of Boone County, Indiana, together with waiver of notice and consent executed by Kenneth M. Harris. On that date, Appellee Mary Johnson was appointed Guardian of the person of David Lee Harris, a minor.

On September 4, 1970, Kenneth M. Harris filed his verified petition for termination of guardianship and removal of guardian which alleged:

"1. That Petitioner is the natural father of David Lee Harris, the above named minor.

2. That Mary Johnson was appointed Guardian of the person and estate of said minor with the alleged consent of Petitioner.

3. That said alleged consent was obtained by fraudulent means at a time when Petitioner was under great stress.

4. That Petitioner had no legal notice of the petition of Mary Johnson filed in this Court on September 18, 1969, praying for an order appointing her Guardian of said minor child.

5. That Petitioner as the natural father of said minor child is the proper person to have custody, care and control of him; that he is able and willing to provide the said minor child with a proper home and to rear him in a proper manner, and to give him the love and affection of a father that he needs and is entitled to have.

WHEREFORE, Petitioner prays that the order of this Court of September 18, 1969, appointing Mary Johnson Guardian of said David Lee Harris, the minor child of this Petitioner, be set aside and Mary Johnson be directed forthwith to deliver the custody, control and care of said minor child to this Petitioner."

An Evidentiary Trial and Hearing were held after which the Trial Judge overruled the verified petition for termination of guardianship and removal of guardian. The sole contention of error is that this decision was contrary to law or an abuse of discretion.

David Lee Harris, a minor, approximately nine years of age, is the son of Appellant, Kenneth M. Harris. The natural mother of David Lee Harris died on August 14, 1963, and subsequently, the father, Kenneth M. Harris, married Betty Harris. In June of 1969, David Lee Harris was taken by his father to live in the home of his maternal grandparents in Boone County, Indiana. At the time David Lee Harris was delivered to his grandparents' home, Kenneth M. Harris was having marital difficulties with his present wife, Betty, who had told him to get rid of the children, referring to David Lee Harris. A few days later, also in June or July of 1969, David Lee Harris went to live in the home of his maternal aunt, the Appellee Mary Johnson, and has lived there since June of 1969. Since June of 1969, the father Kenneth M.

Harris has paid the total sum of $90.00 for the support of his son David Lee Harris. In 1969, Kenneth M. Harris said his son David Lee Harris would have to return home to start school, and David said that he did not want to go home, to the home of his father.

In August, 1969, Kenneth M. Harris signed a waiver of notice and consent for the appointment of a guardian for the person of David Lee Harris, a minor. There is a dispute in the evidence as to the exact circumtsances surrounding the execution of such waiver and consent. However, we will consider the evidence here in the light most favorable to the Appellee. In August of 1969, Kenneth M. Harris said he thought it was in the best interests of his child, David, to sign the waiver and to consent to the appointment of Guardian. In November, 1969, Kenneth sued his wife Betty for divorce and she counter-claimed. By September 25, 1970, the time of the trial in this case, Kenneth and Betty had resumed living together as husband and wife, and their home consisted of Kenneth's other son William, two of Betty's children by a previous marriage and a third child of Betty's whose father's name is unknown to Kenneth. Betty Harris did not testify at the trial of this case.

At first blush, we are thus confronted with an appeal from a negative judgment denying the relief sought in the petition of Kenneth M. Harris to terminate guardianship and remove guardian. In order to reverse such a decision, it is necessary for us to determine that the trial court committed reversible error as a matter of law, and in this case, it is necessary to determine that the trial court abused its discretion as a matter of law. It is quite clear that the petition of Kenneth M. Harris and the evidence that he submitted in his own behalf that the question of the proper person to have the custody and control of his minor son David was at the heart of the proceeding of the trial court. In fact, he expressly placed his own fitness to have the custody of David in issue by the allegations of his petition. (The

trial court gratuitously wrote a letter to the parties explaining its decision. However, this is not a part of its judgment in this case. It is also correct that neither party in this case requested the trial court to make special findings of fact and conclusions of law. So the only judgment of the trial court here is a general negative judgment.)

One of the most agonizing experiences of any trial judge who exercises domestic relations jurisdiction is the decision as to the custody of minor children. The enormous human dimensions and implications of such decisions are quite obvious. The impact of these decisions on the future life of children is absolutely critical. In these cases, the trial judge has the opportunity to see and hear the parties and the witnesses, and this opportunity to observe the parties and the witnesses is probably more vital in custody cases than in many other kinds of cases. In this case, the only testimony submitted by Kenneth M. Harris was his own testimony.

Because of the intimate and personal nature of the decision of trial judges regarding custody, courts of review have properly exercised great judicial restraint in respect to such decisions on appeal. We approach the decision in this case with that attitude as a backdrop.

Necessarily, great deference must be given to the parental rights of natural parents. However, these rights are not absolute and must yield on occasion to what is in the best interests and welfare of the child. This is in accord with the position taken by our Supreme Court in *Glass* v. *Bailey,* 233 Ind. 266, 267, 118 N.E.2d 800 (1954) where it said:

> "In cases of this kind the natural rights of the parent are entitled to due consideration, but the welfare and happiness of the child is the paramount consideration. Hard and fast rules of law do not prevail. The question presented rests upon the exercise of sound judicial discretion by the trial judge. It is seldom, indeed, that this court will reverse the decision of a trial judge who has seen the child, and has seen and heard the witnesses and observed their appearance and demeanor, all of which facilities for reaching

a just and safe conclusion are denied to us. The above principles are so firmly established that the citation of authorities would be superfluous."

See also *Beach* v. *Leroy*, 228 Ind. 122, 89 N.E.2d 912 (1950) and *Brown* v. *Beachler*, 224 Ind. 477, 68 N.E.2d 914 (1946).

In *Glass, Beach* and *Brown*, the trial court continued custody in foster parents despite the fact that the natural parent was found to be a fit and proper person. The crux of the decision in these cases was the paramount and overriding welfare of the child. In all three of the above cited cases, our Supreme Court refused to intervene and to substitute its judgment for that of the trial judge. It must be admitted that in *Glass, Brown* and *Beach* the question of custody came up in a slightly different procedural context than in the instant case. However, it was suggested by the Appellant in Oral Argument that the procedural context was basically irrelevant and that the heart of the matter was the paramount welfare of the child. We agree. In order to reverse this case, it must appear from the uncontradicted and undisputed evidence and all reasonable inferences therefrom that the trial court violated its discretion and reached an untenable position. See *Gilchrist* v. *Gilchrist*, 225 Ind. 367, 75 N. E. 2d 417 (1947).

The evidence most favorable to the Appellee is that the Appellant natural father voluntarily surrendered custody of his minor son, David, and permitted a maternal aunt to care for him for more than a year in her home. During that period of time, the natural father paid the sum of $90.00 in support of his minor son. There is also evidence, admittedly disputed, of a negative attitude of the stepmother towards this child and of domestic difficulties in the home of the natural father. While there was the father's testimony that these marital difficulties had now been resolved, the trial court was not privileged to see or to hear any testimony from the stepmother. We do not need to decide here whether the trial court was entitled to draw a negative inference from the failure to call the stepmother as a witness. We need not

become concerned with the extensive authorities on that subject collected in 5 ALR 2d at p. 895. However, the natural father had the burden of proof and persuasion in this case. The trial court obviously determined that he failed to sustain these burdens. The failure to call the stepmother as a witness may have well played a contributing role in such failure.

The record in this case discloses that the trial judge was warranted in determining that the Appellant natural father had failed in his burden of proof and persuasion with reference to his petition to terminate the guardianship and remove the guardian.

The trial court did not commit error as a matter of law and the judgment must be and hereby is affirmed.

Hoffman, C. J., Staton and White, J. J., Concur.

NOTE.—Reported in 273 N. E. 2d 779.