### In re the GUARDIANSHIP OF J. K.

**Stephen M. Lafary and Karen S. Lafary, Appellants–Defendants,**

v.

**Jessie D. Kindred and Dawn R. Kindred, Appellees–Plaintiffs.**

No. 55A04–0607–CV–396.

Court of Appeals of Indiana.

March 12, 2007.

---

Paul J. Watts, Spencer, IN, Attorney for Appellants.

## OPINION

SHARPNACK, Judge.

■ Stephen M. Lafary and Karen S. Lafary appeal the trial court's termination of their guardianship over their granddaughter, J.K. The Lafarys raise three issues, which we consolidate and restate as whether the trial court abused its discretion by terminating their guardianship of

J.K.[1] We affirm.

The relevant facts follow. On April 15, 2005, the Lafarys filed a petition for appointment of guardian over J.K., born May 29, 2001. J.K. is the daughter of Jessie and Dawn Kindred, and the Lafarys are J.K.'s maternal grandparents. The Lafarys alleged that the Kindreds had substance abuse problems, were not regularly employed, threatened to commit suicide, had criminal histories, and had pending criminal investigations against them. The Lafarys alleged that J.K. had resided with the Lafarys for all but two months of her life. After a hearing, the trial court granted the Lafarys' petition for appointment of guardianship over J.K. as follows:

> This matter having come before the Court on September 9, 2005, ... and the Court having spoken with the child, received drug results from screens on the parents and received a new letter from Jessie Dean Kindred on October 11, 2005, the Court now finds as follows:
>
> 1) That the child, [J.K.], was born May 29, 2001 and has not reached the age of capacity/majority whereby she can handle her own affairs financial or personally and is therefore deemed a minor by this Court.
>
> 2) That Jessie Dean Kindred and Dawn Renee Kindred are the biological parents of the child.
>
> 3) That the [Lafarys] are the maternal grandparents of the child.
>
> 4) That from the evidence presented, it is clear that neither parent has worked for any substantial period of time since the child was born.
>
> 5) That the child lived with the [Lafarys] for all but about two (2) months of her life, up to the time this petition was filed.
>
> 6) That over the years, Jessie Dean Kindred has been involved with the justice system as a juvenile and an adult.
>
> 7) That Jessie Kindred has been convicted of a serious battery against another person.
>
> 8) That Jessie Kindred currently has theft charges pending against him, a recent protective order filed by Dawn Kindred in October 2005, and a divorce between the Kindreds.
>
> 9) That Dawn Kindred has been convicted of theft in the past, has been accused of theft from former employers and is facing a new theft charge in Morgan County.
>
> 10) That Dawn Kindred has filed a new protective order against Jessie Kindred in October 2005 and is seeking a divorce from Jessie.
>
> 11) That both parties have been linked to drugs and drug use in the recent past.
>
> 12) That the drug tests ordered by the Court showed Jessie Kindred with Benzodiazepines in his system, which are consistent with a prescription he claims to have. That Dawn Kindred's test was very diluted and showed no illegal substances at this time.
>
> 13) That Jessie Kindred has made threats of suicide in the past.

1. The Kindreds did not file an appellee's brief. When the appellees have failed to submit an answer brief we need not undertake the burden of developing an argument on the appellees' behalf. *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006). Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *Id.* Prima facie error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Id.* Where an appellant is unable to meet this burden, we will affirm. *Id.*

14) That the court received a new letter from Jessie Kindred, just as an order was about to go out, and said letter was received on October 11, 2005.

15) That said letter indicated that the parties were seeking a divorce (although they claimed during the hearing it was to be dismissed), and upon further investigation, a protective order had been filed by wife against husband in this case.

16) That the relationship between parents can be described at best as erratic, chaotic and inconsistent.

17) That the parents have been unable to obtain work since this child was born and have relied upon the good nature of family members to shelter them, care for them and support them.

18) That during this time, both parents have continued to commit crimes and continue to argue amongst themselves in their divorce and/or protective order filings in this case.

19) That as evidenced by the testimony, as well as the recent letter to the Court, the child has again been taken from a home where the child was staying (with husband's mom).

20) That all of these factors have resulted in an inconsistent and dangerous pattern that this child should not be subjected to.

21) That the appointment of a guardian is necessary as a means of providing care and supervision of the minor child that is not being done by the parents at this time.

22) That the relationship with the [Lafarys] is a constant one that has provided some stability to this child's life over the years, and is the only constant she has known.

23) That, therefore, the Court finds it in the best interests of the child to have guardians appointed by the Court and hereby appoints Stephen and Karen Lafary as the guardians in this case.

24) That no bond will be required to be filed by the [Lafarys].

25) That the parents shall be allowed visitation with the child. . . .

\*　　\*　　\*　　\*　　\*　　\*

Appellant's Appendix at 15–17.

On March 22, 2006, Dawn filed a letter with the trial court requesting termination of the guardianship. After a hearing, the trial court granted the termination of the guardianship as follows:

1) That some of the circumstances have changed for the parents since the last hearing.

2) That the mother is now working and is nearing the end of probation.

3) That there is a current probation hearing for contempt of mother, but it is in regards to non-payment of fees and the Court does not consider that substantial in its determination.

4) That father has apparently qualified for some type of disability and is receiving payments at this time.

5) That the parties have a new apartment they are living in.

6) That the child has visited with the parents on occasion and the parents have expressed concern with things the child has told them and the way she has acted at those visits.

7) That the guardians still have concern over the stability and safety of the child if she were to be returned to the parents.

8) That the guardians point to one episode where the father apparently

was approached and struck by another individual.

9) Further, this individual remains an apparent threat to father and parents expressed this fear to the guardians.

10) That the mother apparently lied to the welfare department and received some benefits for the child when the child was not in fact in her custody.

11) That criminal charges may or may not be coming from that action by mother.

12) That the guardianship was put into place due to the divorce filings, drug issues, criminal cases and instability facing the parents and the child.

13) That the criminal cases and protective order against father were dismissed.

14) That the divorce filing has been terminated.

15) That there is no evidence the drug issues have still been a problem.

16) That the mother is employed and the father is receiving money from disability.

17) That circumstances have changed and do warrant a change in this guardianship that will lead to its' eventual termination.

18) That while it may seem clear to the naked eye that this child may have more opportunities in the hands of the guardians, it is not the court[']s job to place children where they may have more opportunities, but to keep them with their parents when possible and when safe.

19) That therefore, the guardianship will terminate on July 8, 2006 at 6:00 p.m. with an eventual phase back to the parents occurring up to that time.

\* \* \* \* \* \*

23) That the parents need to be on notice that any further involvement with the law, drugs or instability between them will likely lead to another guardianship that will not be so easily removed next time.

\* \* \* \* \* \*

Appellant's Appendix at 26–27.

The Lafarys filed a motion to correct error. The Lafarys' counsel also filed an affidavit alleging that Dawn had been terminated from her employment due to absenteeism and that the Kindreds were moving to a new apartment. The Lafarys' counsel also attached a report from a psychologist regarding the effects of separation from the Lafarys upon J.K. The trial court denied the Lafarys' motion to correct error.

The issue is whether the trial court abused its discretion by terminating the Lafarys' guardianship of J.K. All findings and orders of the trial court in guardianship proceedings are within the trial court's discretion. Ind.Code § 29–3–2–4. Thus, we will review those findings under an abuse of discretion standard. *E.N. ex rel. Nesbitt v. Rising Sun–Ohio County Community School Corp.*, 720 N.E.2d 447, 450 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* In determining whether the trial court abused its discretion, we look to the trial court's findings of fact and conclusions thereon. We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by infer-

ence." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard,* 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind.1999).

The Lafarys first challenge the propriety of the trial court placing the burden of proof on them. According to the Lafarys, because they met their burden of proof in the initial guardianship action, the Kindreds should have had the burden of proving that they were fit in subsequent requests to terminate the guardianship.

Under Ind.Code § 29-3-5-3, a trial court may appoint a guardian to a minor if "the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor." In addition, the Indiana Supreme Court has held:

> Despite the differences among Indiana's appellate court decisions confronting child placement disputes between natural parents and other persons, most of the cases generally recognize the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent. This presumption does provide a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests. To resolve the dispute

in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." *Hendrickson [v. Binkley],* 161 Ind.App. [388,] 396, 316 N.E.2d [376,] 381 [ (1974) ]. In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review. A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required. [*In re Marriage of] Huber,* 723 N.E.2d [973,] 976 [ (Ind.Ct.App.2000) ].

*In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind.2002), *reh'g denied.*

As for the termination of a guardianship, Ind.Code § 29–3–12–1(c) provides that a trial court "may terminate any guardianship if . . . (4) the guardianship is no longer necessary for any other reason." The Lafarys contend that where, as here, a parent files a petition to terminate a non-parent's guardianship over a child, the burden of proving that a guardianship is no longer necessary should rest with the parent. In support of this argument, the Lafarys cite *Harris v. Johnson*, 149 Ind. App. 512, 273 N.E.2d 779 (1971). We acknowledge that this court held in *Harris* that the natural father had the burden of proof and persuasion with respect to his petition to terminate the guardianship over his child. *Harris*, 149 Ind.App. at 518, 273 N.E.2d at 782. However, we criticized *Harris* in *In re Guardianship of R.B.*, 619 N.E.2d 952 (Ind.Ct.App.1993). There, the mother filed a petition to terminate a grandmother's guardianship of a child, and the trial court granted the petition. *R.B.*, 619 N.E.2d at 953–954. The grandmother cited *Harris* for the proposition that the mother bore the burden of proof. *Id.* at 954. We disagreed, noting that:

> *Harris* provides: "However, the natural father had the burden of proof and persuasion in this case." This statement is without citation to authority and is contrary to the majority of case law in this area. *See Matter of Guardianship of Riley* (1992), Ind.App., 597 N.E.2d 995; *Hunt v. Whalen* (1991), Ind.App., 565 N.E.2d 1109; *In re Custody of McGuire*

(1985), Ind.App., 487 N.E.2d 457; *Styck v. Karnes* (1984), Ind.App., 462 N.E.2d 1327; *Hendrickson*, 161 Ind.App. 388, 316 N.E.2d 376. Thus, we decline to give it precedential value.

*Id.*

■■■ In fact, Indiana courts have long held that "[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent."[2] *In re Custody of McGuire*, 487 N.E.2d 457, 460–461 (Ind.Ct.App.1985). "Rather, the burden of proof is always on the third party." *Id.* at 461. *See also In re Guardianship of A.R.S.*, 816 N.E.2d 1160 (Ind.Ct.App.2004) (applying the Indiana Supreme Court's opinion in B.H. to a parent's petition to terminate guardianship of her children by their grandparents); *In re Paternity of V.M.*, 790 N.E.2d 1005, 1008 (Ind.Ct.App.2003) (holding that the grandparents, who had custody of their grandchildren, had the burden to overcome the presumption in favor of the natural father in the father's petition to modify custody of the children); *In re Guardianship of L.L.*, 745 N.E.2d 222, 231–232 (Ind.Ct.App.2001) (holding that the grandmother, who had custody of her grandson, had the burden to prove the mother's present unfitness in mother's petition to terminate grandmother's guardianship), *trans. denied.* Consequently, we conclude that, even though the Kindreds filed the petition to terminate the guardianship, the Lafarys had the burden of

---

**2.** We recognized a reason for this placement of the burden on the guardian in *In re Guardianship of L.L.*, 745 N.E.2d 222, 233 (Ind.Ct. App.2001). There, we noted:

> For the sake of children, society should encourage parents who are experiencing difficulties raising them to take advantage of an available "safety net," such as a

grandparent who is willing to accept temporary custody of a child. It would discourage such action by parents in difficult straits and discourage efforts to "reform" or better their life situation if their chances of later reuniting with their children were reduced.

*L.L.*, 745 N.E.2d at 233.

proving the requirements set forth by the Indiana Supreme Court in *B.H.*

■ The issue before the trial court was "whether the important and strong presumption that [J.K.'s] interests are best served by placement with the [Kindreds] is clearly and convincingly overcome by evidence proving that [J.K.'s] best interests are substantially and significantly served by placement with [the Lafarys]." *B.H.*, 770 N.E.2d at 287. The Lafarys could overcome the presumption in favor of the Kindreds by establishing the Kindreds' unfitness or acquiescence or by demonstrating that a strong emotional bond had formed between J.K. and the Lafarys, but the trial court was not limited to these criteria. The Lafarys do not argue that the Kindreds acquiesced in the guardianship of J.K. Rather, they argue that the Kindreds are unfit and that a strong emotional bond exists between J.K. and the Lafarys.

■ The evidence produced at the hearing regarding the termination of the guardianship revealed some changes since the initial guardianship hearing. Dawn was now working and nearing the end of probation, Jessie had qualified for some type of disability and was receiving payments, the Kindreds now had their own apartment, the divorce proceedings had been dismissed, the criminal cases and protective order against Jessie were dismissed, and no evidence of drug abuse was presented. On the other hand, the Kindreds were behind in their rent payments, they could not afford a telephone, and they had been threatened and Jessie had been assaulted by a person involved in the prior criminal cases. Additionally, Dawn had lied to the welfare department and improperly received benefits; it was unknown if criminal charges would be filed as a result.[3] Although Karen Lafary testified that J.K. had lived with them for most of her life and was doing well, no evidence was presented at the hearing regarding the bond between the Lafarys and J.K. or the lack of a bond between J.K. and the Kindreds.

The trial court originally granted the guardianship because of "divorce filings, drug issues, criminal cases and instability facing the parents and the child." Appellant's Appendix at 26. The trial court concluded that the circumstances warranting the guardianship had changed and that the guardianship should now be terminated. We cannot say that the Lafarys proved by clear and convincing evidence that the guardianship should continue. The evidence regarding whether the Kindreds are currently unfit to parent J.K. is conflicting. In essence, the Lafarys' request that we reweigh the evidence and judge the witnesses' credibility, which we cannot do. We conclude that the trial court's termination of the guardianship is not clearly erroneous. *See, e.g., L.L.*, 745 N.E.2d at 233 (holding that the grandmother failed to rebut the presumption in favor of the mother and the guardianship should be terminated).

For the foregoing reasons, we affirm the trial court's termination of the guardianship.

Affirmed.

---

**3.** The Lafarys also rely upon the fact that Dawn lost her job after the hearing and that the Kindreds moved after the hearing. This evidence was presented in an affidavit by the Lafarys' counsel with the Lafarys' motion to correct error. However, this evidence was not properly before the trial court. Although newly discovered evidence is a basis for a motion to correct error under Ind. Trial Rule 59, "facts not in existence at the time of trial do not constitute a ground for a new trial because of newly discovered evidence." *Styck v. Karnes*, 462 N.E.2d 1327, 1331 (Ind. Ct.App.1984); *see also Branstad v. Branstad*, 400 N.E.2d 167, 169 (Ind.Ct.App.1980); 22 I.L.E. *New Trial* § 49.

SULLIVAN, J. concurs.

CRONE, J. dissents with separate opinion.

CRONE, Judge, dissenting.

I agree with the Lafarys that "where, as here, a parent files a petition to terminate a nonparent's guardianship over a child, the burden of proving that a guardianship is no longer necessary should rest with the parent." Op. at 692 (citing *Harris,* 149 Ind.App. 512, 273 N.E.2d 779). Therefore, I respectfully dissent.

As the majority notes, our supreme court held in *Guardianship of B.H.* that

before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption [that the child's best interests are ordinarily served by placement in the custody of the natural parent] will not be overcome merely because "a third party could provide the better things in life for the child."

770 N.E.2d at 287 (citation omitted). All indications are that the trial court followed this standard in granting the Lafarys' petition for appointment of guardianship over J.K. Thus, the trial court determined that the Lafarys met their burden of presenting clear and convincing evidence that J.K.'s best interests would be substantially and significantly served by placement outside the home of the Kindreds, her natural parents.

I believe that once a nonparent has overcome this evidentiary hurdle, he or she should not have to do so again in responding to a parent's petition to termi-nate a guardianship. My belief is based on several practical considerations, not least of which is the plain language of Indiana Code Section 29–3–12–1(c): "The court may terminate any guardianship if ... the guardianship is no longer necessary for any other reason." If a nonparent, as the petitioner for creating a guardianship, has the burden of establishing by clear and convincing evidence that a need for the guardianship exists, then surely the parent, as the petitioner for terminating a guardianship, should have the burden of establishing by a preponderance of the evidence that the guardianship is no longer necessary. *See Muncie Bldg. Trades Council v. Umbarger,* 215 Ind. 13, 16, 17 N.E.2d 828, 829 (1938) ("Courts cannot act upon the assumption that a state of facts exists which has not been proved, and which there has been no effort to prove."). This is not to say that the "important and strong presumption that a child's interests are best served by placement with the natural parent" should vanish once the guardianship is established, but rather that the presumption should not absolve the parent of the burden of establishing, from the totality of the evidence, that the guardianship is no longer necessary.

Another consideration is the turmoil that arises from the repetitive filing of petitions to terminate a guardianship. Understandably, parents are often eager to regain custody of their children soon after a guardianship is established, regardless of whether the need for the guardianship still exists. The filing of multiple (and often meritless) petitions to terminate a guardianship can place unwarranted stress on guardians and the judicial system and can thwart everyone's efforts to serve the best interests of the children involved. Placing the burden on the parent to establish that the guardianship is no longer necessary will allow the trial court to dispose of

meritless petitions more quickly and thereby protect the best interests of the children.[4] Stated differently, requiring the guardian to produce clear and convincing evidence in support of the guardianship at each successive hearing is too onerous and a waste of valuable judicial resources.

It is true, as the majority observes, that the court in *Harris* cited no authority in stating that the natural father had the burden of establishing that the guardianship should be terminated. 149 Ind.App. at 518, 273 N.E.2d at 782.[5] Nonetheless, I believe that *Harris* is correct and reflects a better understanding of practice and procedure than subsequent cases on this topic. Based on the foregoing, I believe that we should reverse and remand for a hearing on the Kindreds' petition for terminating the Lafarys' guardianship in which the Kindreds bear the burden of establishing that the guardianship is no longer necessary.

---

4. I reiterate my belief that "[o]nce the threshold for establishing a guardianship has been met, ... it is overly burdensome to require special findings upon the denial of every petition for modification or termination. Guardianships often spawn many relatively meritless petitions, which I believe should be dealt with as efficiently and expeditiously as possible." *A.R.S.*, 816 N.E.2d at 1163 (Crone, J., dissenting).

5. As a former trial judge, I agree with Judge Sharp's observation in *Harris* that

[o]ne of the most agonizing experiences of any trial judge who exercises domestic relations jurisdiction is the decision as to the custody of minor children. The enormous human dimensions and implications of such decisions are quite obvious. The impact of these decisions on the future life of children is absolutely critical.

149 Ind.App. at 516, 273 N.E.2d at 781. I believe that placing the burden on the parent to establish that the guardianship is no longer necessary will greatly assist trial courts in making such momentous decisions regarding the future life of the children involved.